*900 Plaintiffs seek reimbursement for sums expended performing a contract with the Illinois Office of Education to provide meals to school children pursuant to the National School Lunch Act. Defendant’s motion for summary judgment, opposed by plaintiffs, maintains that defendant’s funding of the meal program was a sovereign act for which it cannot be held liable and that defendant did not contract with plaintiffs either directly or through the State of Illinois as defendant’s alleged agent. For the reasons stated below, we grant defendant’s motion and dismiss the petition.
In this motion for summary judgment we consider all the facts in a light most favorable to the non-moving party. Bogart v. United States, 210 Ct. Cl. 706, 708 (1976); Housing Corp. of America v. United States, 199 Ct. Cl. 705, 710, 468 F. 2d 922, 924 (1972). Plaintiff Akiba South Side Jewish Day School, a non-profit corporation (hereinafter Akiba), was a "service institution” or sponsor during the summer of 1977 pursuant to the National School Lunch Act, as amended, Pub. L. No. 94-105, 42 U.S.C. §§ 1751 et seq. (1976) (hereinafter act). The program established by the act is administered by the Department of Agriculture. Under the program grants-in-aid are given to states and the states contract with "service institutions” or sponsors, such as plaintiff Akiba, to provide a food service for children during the summer months. Service institutions may in turn contract with food service management companies such as plaintiff Open Kitchens, Inc. (hereinafter Open Kitchens), to actually prepare and deliver the meals to the sponsor. Regulations governing the program are contained in 7 C.F.R. § 225 (1979).
On June 3, 1977, Akiba submitted to the Illinois Office of Education (hereinafter IOE) an application to participate in the Illinois program as a sponsor and to operate a nonprofit food service for children from June 27, 1977, to September 3, 1977. The application was accepted and on June 24, 1977, IOE and Akiba entered into a contract accordingly. It is quite clear from the contract that the party with whom Akiba contracted was the Illinois Office of Education. There is no indication whatsoever that the United States was a party to the contract or that IOE was acting as an agent on behalf of the United States. As to *901 payment, the contract provided, "The State Agency shall forward advance payments to the Service Institution in accordance with Section 225.13 of the [C.F.R.] Regulations.” By signing the agreement both Akiba and IOE agreed to be bound by certain regulations promulgated by the United States Department of Agriculture (USDA).
On June 20, 1977, Akiba entered into a contract with plaintiff Open Kitchens whereby Open Kitchens was to prepare and deliver unitized meals to Akiba. The solicitation and contract forms used by Akiba and Open Kitchens were supplied by the IOE. The contract forms often refer to compliance with certain USDA regulations; for instance the meal specification portion of the contract is captioned "U.S. Department of Agriculture Required Meal Patterns.”
Plaintiffs allege they performed all duties called for by their respective contracts. Akiba submitted a claim for reimbursement to the IOE for $541,530. IOE, however, only reimbursed Akiba $360,491. Plaintiff Akiba, seeking the balance of $181,039, contends the sole reason IOE refused to fully reimburse Akiba was because the Food and Nutrition Service of the USDA (hereinafter FNS) ordered the action based upon an allegedly incorrect audit of Akiba’s records performed by defendant’s Office of Audit. Plaintiff Open Kitchens similarly argues it is still due $161,897.22 under its contract with Akiba which Akiba is unable to pay because it was not fully reimbursed.
IOE continued to refuse to pay any more than the $360,491 mentioned and in June 1978 informed plaintiffs that the pursuit of an administrative review would be a useless act since IOE had exhausted its program funds. Without taking any other action against the IOE plaintiffs filed suit in this court on August 10, 1978.
Plaintiffs’ theory of recovery may be simply stated. It is that, for purposes of the contracts involved, the IOE was an agent of the USDA and that therefore Akiba has an express contract with the United States. In the alternative, plaintiffs submit that the acts of the USDA, the FNS, and the Office of Audit impose liability on defendant on the theory of implied contract. Plaintiff Open Kitchens additionally argues that it is a third-party beneficiary of the contract between Akiba and defendant.
Defendant relies primarily upon our decision in D. R. Smalley & Sons, Inc. v. United States, 178 Ct. Cl. 593, 372 *902 F. 2d 505, cert. denied, 389 U.S. 835 (1967) (hereinafter Smalley). In Smalley plaintiff, an Ohio corporation, sued the United States for damages in connection with highway construction contracts plaintiff had entered into with the State of Ohio. The United States was to reimburse the State of Ohio 90 percent of the construction costs in accordance with various Federal Aid Highway Acts. Plaintiff in Smalley alleged, as do plaintiffs herein, that the complex of federal regulations, requirements, and federal funding of the construction made the United States the real party in interest and the State of Ohio was merely the agent of defendant. Rejecting plaintiffs claim in Smalley, we held that federal funding of the projects was a sovereign act and "[s]uch sovereign acts of defendant do not in any way make the State of Ohio its agent as claimed by plaintiff.” 178 Ct. Cl. at 598, 372 F.2d at 508. This reasoning also defeated plaintiffs implied contract argument.
We think our reasoning in Smalley as discussed above and as more recently applied in Correlated Development Corp. v. United States, 214 Ct. Cl. 106, 556 F.2d 515 (1977) (hereinafter Correlated Development), operates to bar plaintiffs’ claims. In Correlated Development plaintiff entered into four contracts with four local housing authorities (LHA), agents of the State of Mississippi, for the construction of low-rent housing units. The LHA were created pursuant to the Housing Act of 1937 (42 U.S.C. §§ 1401 et seq.). The United States was not a party to the contracts although a representative of the Secretary of Housing and Urban Development (HUD) of the United States approved the contracts. HUD also financed the LHA contracts through loans and annual contributions. Plaintiff sued the United States after contract completion for increased construction costs, lost profits, and withheld damages. We concluded that neither the financing of the projects nor approval of them made HUD a party to the LHA contracts:
* * * The loans and contributions were gratuities from the government to the LHA to provide low-rent housing for the people, and in making them the government was acting in its sovereign capacity. There was no privity of contract between HUD and the plaintiff with respect to the performance of the *903 contracts of sale by the purchasers by reason of HUD’s approval of the sale and assignment contract aforesaid, nor did such approval impose any liability on the government with respect to the performance of the contracts of sale by the purchasers. * * * HUD did not make the Government a party to the contracts of sale by such approval. [214 Ct. Cl. at 112-13, 556 F.2d at 519.]
The court in Correlated Development then proceeded to demonstrate how the court’s holding in Smalley barred plaintiffs contentions that: (1) the Federal Government was a party to the contracts; (2) there had been a fifth amendment taking; and that (3) there was privity of contract between the United States and plaintiff.
The situation of plaintiffs herein is much the same as in Smalley and Correlated Development. The dispensing of grants or gratuities by the United States in its sovereign capacity, as here, to a state does not make the state an agent of the United States when the state contracts to expend the granted funds. Hence, there was no express contract between plaintiffs and defendant. Nor would approval of the contracts involved by the USDA make defendant a party to the contracts. Correlated Development, supra, 214 Ct. Cl. at 112, 556 F. 2d at 519.
This reasoning also defeats plaintiffs’ implied contract theory. Smalley, supra, 178 Ct. Cl. at 598, 372 F. 2d at 508. Simply because plaintiffs and the IOE agreed to be bound by USDA regulations does not make the USDA a party to their contract.
Under the circumstances, plaintiffs’ contract action, if any, is against the State of Illinois, with whom they contracted. In essence, plaintiff Akiba alleges it was the action of defendant’s auditing agent which caused plaintiffs not to be fully reimbursed. While such action on the part of defendant might conceivably constitute a kind of tortious interference, it certainly does not give rise to a suit in contract, and this court in any event would have no jurisdiction over tort claims against the United States. 28 U.S.C. § 1491 (1976); Somali Development Bank v. United States, 205 Ct. Cl. 741, 508 F. 2d 817 (1974).
Because we have concluded that plaintiff Akiba did not contract with the United States, it is clear plaintiff Open *904 Kitchens’ third-party beneficiary argument also must fail. See also Beco, Inc. v. United States, 214 Ct. Cl. 820, 822 (1977).
It Is Therefore Ordered, upon consideration of the parties’ submissions and other papers, but without oral argument, that defendant’s motion is granted and plaintiffs’ petition is dismissed.