**Lisa LEHNER, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 501–81C.**

United States Claims Court.

Feb. 14, 1983.

Lisa Lehner, pro se.

Peter M. Lancaster, with whom was Asst. Atty. Gen. J. Paul McGrath, Washington, D.C., for defendant.

## OPINION

NETTESHEIM, Judge.

This case comes before the court on defendant's motion for summary judgment and plaintiff's opposition.

## FACTS

Plaintiff Lisa Lehner ("plaintiff"), appearing *pro se*, filed her petition in this

court on September 9, 1981. The petition consisted solely of her March 17, 1981 amended complaint filed against the Secretary of the Department of Housing and Urban Development ("HUD") in the United States District Court for the Northern District of California (the "amended complaint"). The district court on July 10, 1981, had transferred the non-tort aspects of the action to the United States Court of Claims. The amended complaint alleged that plaintiff, as operator of the Coastside Convalescent Hospital ("Coastside"), in Montara, California, had assigned to HUD certain medical claims totalling $19,712.00 in exchange for defendant's agreement to halt its foreclosure action against Coastside for mortgage arrearages totaling $80,000. A typewritten document captioned "Assignment" and dated August 20, 1974, is appended to the amended complaint. This agreement was made on behalf of HUD by a government official, as the amended complaint relates it, "with apparent authority" —that authority presumably being the power to bind defendant to an agreement to halt its foreclosure action.

The foreclosure action was not halted, and plaintiff claims, therefore, that "consideration failed." Plaintiff further alleges that HUD was negligent in not collecting the assigned claims or returning them to her before expiration of the time available to enforce them.[1] Based on these allegations, plaintiff sought "a declaration" cancelling the claims, returning them to her, and compensating her for the claims lost.

1. While this claim sounds in tort, it sets forth the measure of plaintiff's contract remedy for failure of consideration as the full amount of the claims subject to the alleged assignment.

2. Defendant supplied most of the record in this case, including plaintiff's amendment to the second amended complaint in *Luisa Lehner v. United States, et al.*, No. C 76 2028 RHS (N.D. Cal., filed May 17, 1979); an affidavit attesting to certain facts and authenticating HUD records; and a portion of a HUD handbook. Plaintiff's submission consists of two personal declarations and documents relating to a state tax lien satisfied on July 10, 1973.

The record[2] reveals that the following material facts are undisputed.[3] The Federal Housing Administration ("FHA") insured a mortgage placed by Banker's Mortgage Co. of California ("Banker's Mortgage") on Coastside for certain construction and renovation. Eventually, through actions plaintiff attributes to FHA, Coastside became delinquent on its payments, and FHA, as guarantor, paid the loan balance to Banker's Mortgage. Thereupon, Banker's Mortgage assigned its rights under the mortgage to FHA, which deeded its interest to HUD. After HUD completed foreclosure proceedings on November 15, 1974, HUD perfected its title to the property and sold it to another party.

It is also undisputed that prior to foreclosure plaintiff was anxious to reinstate the mortgage. Plaintiff retained an attorney to represent her interests before HUD's San Francisco Regional Office. In a letter dated September 25, 1974, counsel for plaintiff stated that estimates in excess of $30,000 had been obtained concerning claims for reimbursement from California State Medi-Cal ("Medi-Cal"). This letter recites plaintiff's verbal assurance that the FHA will receive all sums received from the Medi-Cal authorities and urges forebearance in proceeding with the foreclosure. A subsequent letter dated October 3, 1974, states that claims have been presented to the Medi-Cal authorities amounting to "at least $29,000." Significantly, counsel continues: "I understand that Mrs. Lehner has made an assignment to the FHA of all sums paid by the State Medi-Cal authorities, and we stand by that commitment and are willing to re-exe-

3. The only fact in dispute, as discussed *infra* is whether the assignment appended to the amended complaint (petition) is the assignment on which plaintiff is suing, *i.e.*, plaintiff's district court complaint appends a typewritten assignment which plaintiff had disavowed. In response to defendant's motion for summary judgment, plaintiff, in her declaration requesting time to take depositions, claimed that the original assignment was handwritten, implying that the latter differed in material respect from the former. As discussed hereafter, plaintiff fails to make any credible showing as to the legal effect of a prior handwritten assignment, even if one existed.

cute that commitment in any form deemed appropriate by your agency." The typewritten assignment on which plaintiff sued in California federal court, and which is the basis of the suit in this court, was dated August 20, 1974. No indication is present in the record that the quoted language could refer to any other prior writing.

By letter dated October 9, 1974, to plaintiff's counsel, HUD noted that the amount due HUD as of that date was $42,212.90 and responded to statements concerning Medi-Cal claims, as follows:

> You state that you are presently in the process of perfecting claims against the California State Medi-Cal in the approximate amount of $30,000. One of our auditors has contacted Mr. Richard Moss, Chief Provider Participation Section, Department of Health, State of California, who has stated that there are no monies due Mrs. Luisa Lehner [plaintiff] ..., since there was no authorized participation in Medi-Cal by the Coastside Convalescent Hospital after October 13, 1972.

Forbearance was denied. Although not attached to HUD's letter, a HUD official has authenticated as a record maintained by HUD Mr. Moss's letter to the Coastside partners dated May 31, 1973, to the effect that Medi-Cal will not enter into a participation agreement with Coastside. Mr. Moss wrote:

> [S]ince Miss Lehner was *suspended* from the Medi-Cal program, effective October 16, 1972, and since the care provided at Coastside Convalescent Hospital is below Medi-Cal standards, the Department is unable to enter into a participation agreement with Miss Lehner or the existing partnership doing business as Coastside Convalescent Hospital. Consequently, payment for care of those Medi-Cal patients still in this facility will not be forthcoming. (Emphasis in original.)

On October 18, 1974, plaintiff's counsel renewed its request for suspension of foreclosure until November 30, 1974. No further mention was made of an assignment. HUD replied on November 5, 1974, rejecting the request and setting the foreclosure sale for November 15, 1974. This letter again addressed the basis for an assignment: "Our Audit Department has made an in-depth investigation of the records found in the hospital, along with the records supplied by your client. Our investigation of Medi-Cal and the Blue Cross Health Plans indicates that there are no funds due to Coastside Convalescent Hospital since October 15, 1972."

After foreclosure in November 1974, plaintiff pursued two avenues of judicial relief. The first, in which she was assisted by counsel, *Luisa Lehner v. United States of America, et al.,* No. C 76 2028 RHS (N.D.Cal., filed Sept. 21, 1976), sought to set aside the foreclosure sale based on various actions by FHA and its agents. After dismissal, plaintiff took an appeal, which is pending before the United States Court of Appeals for the Ninth Circuit. The second action, in which she was also assisted by counsel, *Lisa Lehner v. Secretary of the Department of Housing and Urban Development,* No. C 80 1900 RHS (N.D.Cal., filed May 15, 1980), sounding in both contract and tort, was based on the assignment of the $19,712.00 in Medi-Cal claims. Plaintiff alleged that, having accepted her assignment, HUD failed to process the claims and proceeded with the foreclosure sale to her detriment. The tort aspects were dismissed by the district court, and the contractual questions were transferred to the former United States Court of Claims. The appeal of the order partially dismissing plaintiff's claims is now before the Ninth Circuit.

Defendant moved for summary judgment on five grounds: 1) that plaintiff's claim is barred by the doctrine of laches; 2) that there is no credible evidence that plaintiff had an agreement with an agent of defendant; 3) that the alleged agreement was not supported by consideration; 4) that no agent had actual authority to make the alleged agreement and that any apparent authority of defendant's agent would not bind the defendant; and 5) that plaintiff's tort claims are outside the jurisdiction of this court.

Plaintiff then requested additional time to respond based on her declaration that she was seeking to depose persons, including defendant's affiant Joseph M. Hamblin, Area Counsel for the San Francisco Office of HUD, because, *inter alia,* the assignment identified by Mr. Hamblin was not the original assignment and because Mr. Hamblin admitted that he could not locate the handwritten original. David Benson, her project manager for Coastside, and Lawrence Edelman, an Assistant United States Attorney, were identified by plaintiff as witnesses to the existence of a handwritten assignment. Presumably, plaintiff implied a difference in the documents, although she sued in district court on the typed version and averred that the typed assignment was the basis for her claims, incorporating it by reference into her amended complaint and into her petition filed in this court on September 9, 1981.

Justifiably frustrated by plaintiff's first attempt to revise her theory of suit, defendant then moved for a protective order suspending discovery pending a ruling on its dispositive motion. Defendant argued that legal issues controlled and that its argument that no agreement was reached rested on a conclusive factual record. Judge Roald A. Hogenson entered the protective order.[4]

Plaintiff thereafter opposed summary judgment with a declaration charging that genuine issues of fact existed that precluded summary judgment, omitting, however, any specification of those facts. Plaintiff

also advanced her second revised theory of suit. She declared that Coastside was foreclosed in November 1974 in part to satisfy a $244.60 judgment in favor of the state health department, although that judgment had been satisfied on July 10, 1973. Plaintiff declared that she was forced to pay the judgment twice because of the negligent failure of the FHA and Mr. Hamblin to inform the state authorities that the judgment had been paid. Plaintiff also claimed that a federal tax lien against someone other than herself was erroneously placed on Coastside and that this lien also caused the foreclosure.

## DISCUSSION

The standard to be applied by the court in passing on defendant's motion for summary judgment begins with the principle that the motion must be denied if any genuine issue as to a material fact exists.[5] *E.g., South Louisiana Grain Services, Inc. v. United States,* 1 Cl.Ct. 281, 289 (Cl.Ct. 1982) (LYDON, J.); *News Publishing Co. v. United States,* 218 Ct.Cl. 712, 714 (1978); *Garcia v. United States,* 123 Ct.Cl. 722, 732, 108 F.Supp. 608, 613 (1952). In determining the existence of genuine issues as to material facts, the court considers all facts in the light most favorable to the nonmoving party, *Akiba South Side Jewish Day School & Open Kitchens, Inc. v. United States,* 221 Ct.Cl. 899, 900, 618 F.2d 124 (1979), and must resolve doubts against the movant. *Housing Corp. of America v.*

---

4. Judge Hogenson's December 15, 1982 protective order is not binding on this court, to which this case was assigned by order entered January 25, 1983. Before Judge Hogenson defendant relied on rulings in four cases to support issuance of a protective order. Three of the orders neither demonstrate that all material facts in these cases were admitted for purposes of the motion nor make a reasonable showing that the motion raised only questions of law. The fourth, *Summit Nursing Home, Inc. v. United States,* No. 89–74 (Ct.Cl. April 15, 1975) (order), does. While plaintiff's new claim certainly averred a factual dispute that the original assignment was not the same as the one defendant moved upon, the factual record in this case leaves no reasonable doubt of the undisputed facts germane to summary judg-

ment on multiple grounds, if not on the argument that no agreement was reached.

5. Initially, the court notes that plaintiff's prayer for judgment is defective insofar as it seeks a "declaration" that she is entitled to cancellation and return of the medical claims. The United States Claims Court is without jurisdiction to enter declaratory judgments for the type of relief requested here, although the court's jurisdiction includes declarations of rights in certain situations, *e.g.,* 28 U.S.C. § 1491(a)(3), Federal Courts Improvement Act of 1982, Pub.L. No. 97–164, § 133(a), 96 Stat. 25, 41 (amending 28 U.S.C. § 1491). Therefore, only plaintiff's plea for monetary compensation for loss of the Medi-Cal claims can be considered.

*United States,* 199 Ct.Cl. 705, 710, 468 F.2d 922, 924 (1972).

In response to a motion for summary judgment, however,

> an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

RUSCC 56(e); *see Daugherty v. United States,* 1 Cl.Ct. 216, 217 n. 1 (Cl.Ct.1983) (GIBSON, J.); *Harrah's Club v. United States,* 219 Ct.Cl. 617, 623 (1979) (former Ct.Cl. Rule 101(f), identical to USCCR 56 (e)). Having pleaded that she is entitled to rescission of an assignment and restitution of the benefits conferred thereunder, plaintiff cannot defeat summary judgment by averring in her second declaration that the foreclosure of Coastside was triggered by events wholly unrelated to her claim for recovery,[6] thereby abandoning *sub silento* her contention that the assignment should be rescinded. Alternatively, plaintiff's imprecise second declaration could be construed as asserting that because one of the reasons prompting foreclosure (the previously satisfied $244.60 tax lien) was bogus, foreclosure based on mortgage arrearages was also bogus. Put another way, plaintiff may contend that her assignment theory gains credibility because defendant's agents were responsible for the continued vitality of the previously satisfied tax lien. Wringing meaning out of the declaration, however, does not produce any genuine issue for trial.

Defendant mustered five substantive arguments to plaintiff's claims, which will be considered serially.[7] Defendant is entitled to prevail on any of three grounds.

---

6. In fact, plaintiff's opposition declaration ("So the seizure of the property was made under the wrong information that the judgement [sic] had not been satisfied...") robs her claim of its contractual component. Now she is alleging the tortious failure by Hamblin, *et al.* to inform state authorities that the $244.60 judgment had been satisfied in 1973. This contradicts plaintiff's claim that the foreclosure was

## The Laches Defense

■ Defendant's first argument is that plaintiff's claim, while not time-barred by any statute of limitation, is barred by the doctrine of laches. According to defendant, plaintiff's claim arose no later than November 15, 1974, the date of the foreclosure sale of Coastside. Plaintiff filed her complaint in district court May 15, 1980, only a few months short of this court's six-year statute of limitations. 28 U.S.C. § 2501, *amended by* The Federal Courts Improvement Act of 1982, Pub.L. No. 97–164, § 139(a), 96 Stat. 25, 42. Defendant argues that the time period and plaintiff's alleged inaction since filing support dismissal under laches.

■ The doctrine of laches denies relief to one who has unreasonably or inexcusably delayed in asserting a claim, if prejudice can be shown to result to defendant from the delay. *Acuna v. United States,* 1 Cl.Ct. 270, at 279–280 (Cl.Ct.1982) (WOOD, J.); *Deering v. United States,* 223 Ct.Cl. 342, 347, 620 F.2d 242, 244 (1980). Defendant also argues on the law that sufficient delay—apparently evident here—shifts the burden to plaintiff to show the absence of prejudice caused defendant. The case cited for this proposition, *Devine v. United States,* 208 Ct.Cl. 998, 1001 (1975), presents a 25-year delay in suit by plaintiff, far in excess of the six years here, so the court declines to put plaintiff to the burden of proving absence of prejudice to defendant and instead has considered defendant's proffer of prejudice from the delay.

In *Devine* the court noted that the loss of a witness' testimony could support a finding of a laches bar. Defendant argues that two of the witnesses with whom plaintiff was

---

precipitated by HUD's reneging on its promise to halt the foreclosure, which indisputably was based on the position of HUD that plaintiff owed $80,000 on her mortgage.

7. Defendant expended obvious effort in dealing with all the ramifications of plaintiff's spartan allegations.

supposed to have dealt are now deceased, *Acuna v. United States,* 1 Cl.Ct. at 280, but does not state when they passed away, a fact which would have placed the court in a better position to resolve the existence of the alleged prejudice. The court cannot find on the record circumstances justifying the bar of laches.[8]

### The Lack of Evidence Defense

■ Defendant's second argument is that no credible evidence exists that plaintiff had an agreement with any agent of defendant. Indeed, the sum of plaintiff's evidence on this point consists of her allegation that the agreement was made and a copy of the purported typewritten assignment instrument itself, which her first declaration subsequently disavowed in favor of a handwritten original.

Defendant attacks the credibility of this evidence in several ways: by pointing out facial irregularities of the instrument, including the lack of a signature, the apparent superimposition of a notary seal, and the inaccurate designation of the assignee; by noting that HUD has no record of accepting the assignment in its files, although defendant admits that it was left at HUD's regional office; by arguing that the difference between the asserted value of the assigned medical claims ($19,712) and the mortgage payments in arrears (in excess of $80,000 at foreclosure) decreases the likelihood of an accord; and by reviewing HUD regulations and policies against taking assignments in satisfaction of mortgage obligations.

■ The court is of the view that no credible evidence exists that HUD ever accepted the assignment. An assignment, in order to be effective, must be accepted by the assignee. *McCloskey & Co., Inc. v. Wright,* 363 F.Supp. 223, 228 (E.D.Va.1973). Mr. Hamblin, the party who allegedly knows about the agreement, affirms that the assignment instrument was merely left at HUD's offices and appeared in its files. The instrument itself bears no indication that it was accepted, nor do the files at HUD. While there is a presumption of acceptance when an assignment is beneficial to an assignee, 6A C.J.S. "Assignments" § 63 (1975), where, as here, acceptance of the assignment would have left HUD at least $60,000 short of its mortgage collection, the converse of the presumption follows.

Particularly persuasive is the acknowledgment of plaintiff's counsel in his September 25, 1974 letter to HUD that plaintiff was willing to re-execute her assignment "in any form deemed appropriate by your agency." The assignment appended to plaintiff's amended complaint (petition) is dated August 20, 1974. Thus, HUD did not accept an assignment as of September 25, 1974, which negates any legal effect of an earlier handwritten original executed before the typed version.

■ A showing that no assignment was accepted is different from a showing that no agreement was reached.[9] On this latter

---

8. The other cases cited by defendant as precedent for barring an action under the laches doctrine are not persuasive. *Norris v. United States,* 257 U.S. 77, 42 S.Ct. 9, 66 L.Ed. 136 (1921); *Arant v. Lane,* 249 U.S. 367, 39 S.Ct. 293, 63 L.Ed. 650 (1919); *Brundage v. United States,* 205 Ct.Cl. 502, 504 F.2d 1382 (1979), *cert. denied,* 421 U.S. 998, 95 S.Ct. 2395, 44 L.Ed.2d 665 (1978); and *Miner v. United States,* 143 Ct.Cl. 801 (1958), are all military or civilian back-pay cases with the enhanced prejudice to the government inherent in such situations. In each, plaintiff's delay threatened the government with payment of two salaries for one job performed: the pay for plaintiff after his separation and the pay for the person replacing the plaintiff.

9. For example, the facial irregularities of the assignment paper alone do not necessarily destroy the effectiveness of the instrument. Courts look to the intent of the parties in such cases and have allowed irregular written memorializations to support an assignment. *See, e.g., Nickell v. United States ex rel. D.W. Falls, Inc.,* 355 F.2d 73, 77 (10th Cir.1966) (misspelling of debtor's name not fatal to assignment). The difference in value between the mortgage debt and value of the medical claims does make the alleged agreement seem unlikely, but since parties do make unfavorable deals, the court cannot resolve in defendant's favor the doubt occasioned by the possibility that HUD made an unfavorable deal with plaintiff (assuming that appropriate procedures and authorities had been observed).

point, the court has only plaintiff's assertion that an agreement was made and defendant's assertions that it was not HUD's policy to accept assignments and that two HUD officials with knowledge of the transaction are now deceased. Even defendant's affiant, Mr. Hamblin, does not assert that he did not make such an agreement, only that such assignments were against HUD policy. Summary judgment cannot enter on this ground.

### The Failure of Consideration Defense

■ Defendant's next defense is that the alleged agreement to forebear from foreclosure in return for assignment to HUD of plaintiff's Medi-Cal claims is not binding because of the failure of the consideration provided by plaintiff. The proffered Medi-Cal claims were worthless, defendant argues, because the California State Health Department never agreed to reimburse Coastside under the Medi-Cal program.

Plaintiff has not challenged the May 31, 1973 Medi-Cal letter, which informed Coastside's partners that participation in the Medi-Cal program would not be allowed; that plaintiff had been expelled from the Medi-Cal program over a year before May 31, 1973; and that payment would not be forthcoming to Medi-Cal patients in Coastside as of May 31, 1973. Nothing in the record contradicts the proposition that plaintiff had nothing to assign. However, defendant's argument that this constitutes a failure of consideration, citing J. Calamari & J. Perillo, *The Law of Contracts*, 132 et seq. (2d ed. 1977), is not strictly accurate, although the result is the same. Those authors note that in a bilateral contract the exchange of promises supplies the necessary consideration, as long as the content of the promises would be sufficient consideration. *Id.* § 4–13, at 156. In plaintiff's case the promise to assign claims in return for forebearance from foreclosure would be sufficient consideration. The lack of anything to assign, however, is at least a failure of a condition which operates as a material breach by plaintiff, totally excusing HUD from having to perform on its promise.

An alternatively, and the better construction, is that the failure of having anything to assign is a misrepresentation, which rendered the alleged agreement voidable. Restatement (Second) of Contracts § 164(1) (1979), reads: "If a party's manifestation of assent is induced by either a fraudulent or a material misrepresentation by the other party upon which the recipient is justified in relying, the contract is voidable by the recipient." All of the elements of this principle are met by the alleged agreement: 1) Plaintiff represented to HUD that she had something to assign when, in fact, she did not; 2) the misrepresentation was material, because the claims assigned comprised all of the consideration on her part; 3) the assignment induced HUD to agree to forbear from foreclosure; and 4) HUD's reliance was justified, as plaintiff's assertion was not of opinion, law, intent, or fault. Restatement (Second), *supra,* comments (a), (d). HUD's refusal to accept the empty assignment and its foreclosure of Coastside certainly operated as elections to void the agreement. In sum, plaintiff's agreement with HUD, if it existed, was voided.

### The Apparent Authority Agreement

■ Defendant's fourth argument is that plaintiff's agreement was not with any official who had actual authority to make the agreement and that, under the authority of *Federal Crop Insurance Corp. v. Merrill*, 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947), and its progeny, whether someone at HUD had the apparent authority to make the agreement is irrelevant. *Federal Crop Insurance* counsels that one dealing with the federal government does so at his own risk that a governmental employee or official has actual authority to make any agreement reached. The doctrine found in agency law of apparent authority does not apply to the government. *Federal Crop Insurance,* 332 U.S. at 384, 68 S.Ct. at 3. Moreover, plaintiff has the burden of showing that the officials who made the alleged agreement with her had the authority to commit the Government. *Jascourt v. United States,* 207 Ct.Cl. 955, 521 F.2d 1406,

*cert. denied,* 423 U.S. 1032, 96 S.Ct. 562, 46 L.Ed.2d 405 (1975).

In this case federal regulations require that the Federal Housing Commissioner approve modification to the payment terms of mortgages in default. 24 C.F.R. § 207.-256b(a) (1974), provides: "The mortgagor and the mortgagee may, *with the approval of the Commissioner,* enter into an agreement which extends the time for curing a default under the mortgage and modifies the payment terms of the mortgage." (Emphasis added.) Section 232.251 of the same title makes this section applicable to Coastside. Without an averment sufficient to place the issue of the Commissioner's approval into reasonable dispute, plaintiff has failed to show that anyone with actual authority entered into the alleged agreement with her, and defendant's fourth argument entitles it to summary judgment.

### The Tort Jurisdiction Argument

Defendant's fifth and last argument is that part of plaintiff's plea lies in tort and, therefore, is not within the jurisdiction of the Claims Court. The referenced language of the amended complaint states, "As a proximate result of Defendant's negligence, Defendant never attempted to process [her Medi-Cal] ... claims and never returned the claims or canceled [sic] the assignment thus preventing plaintiff from processing the claims herself."

The basic assertion that the Claims Court does not have jurisdiction over tort actions is beyond argument. The relevant jurisdictional section reads, in part, "The United States Claims Court shall have jurisdiction ... in cases not sounding in tort." 28 U.S.C. § 1491(a)(1), *amended by, supra,* § 133(a), 96 Stat. at 39–40. The cases cited by defendant, *Aetna Casualty & Surety Co. v. United States,* 228 Ct.Cl. ——, 655 F.2d 1047, 1059 (1981), and *Somali Development Bank v. United States,* 205 Ct.Cl. 741, 749, 508 F.2d 817, 821 (1974), stand for the narrower proposition that theories of recovery against the United States based upon the torts of misrepresentation or wrongful inducement are not cognizable in the Claims Court. However, plaintiff's action may be read as an action for restitution or unjust enrichment. While these are equitable theories of law, 66 Am.Jur.2d "Restitution and Implied Contracts" § 3 (1973), not every occasion of their employment grows out of a tortious act. As stated in *City of Los Angeles v. United States,* 105 Ct.Cl. 72, 96, 62 F.Supp. 938 (1945), plaintiff could recover under a theory of *quantum meruit* for the fair and reasonable value of what she furnished. In any event, because what she allegedly assigned was worthless, plaintiff has no right to recover in this manner either.

### CONCLUSION

For the reasons set forth above, defendant's motion for summary judgment is granted, and plaintiff's petition is dismissed.

Costs to the prevailing party.

IT IS SO ORDERED.