Henry J. GRATKOWSKI, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 540–81C.

United States Claims Court.

Oct. 10, 1984.

Michael L. Williams, Eugene, Oregon, for plaintiff.

William J. Snider, Washington, D.C., with whom was Asst. Atty. Gen. J. Paul McGrath, Director, David M. Cohen, Asst. Director, Sandra P. Spooner, Washington, D.C., for defendant; and Michael D. Morin, Washington, D.C., of counsel.

## OPINION

SPECTOR, Senior Judge.

This case is before the court on defendant's motion for summary judgment and plaintiff's opposition thereto. Plaintiff's petition seeks damages for breach of an alleged express or implied contract with the United States.

### Statement of Facts

Plaintiff is a retired Research Forester, formerly employed by the United States Department of Agriculture (USDA). He is currently engaged as a Forestry Consultant. On or about April 18, 1980, plaintiff was contacted by Margaret M. Breinholt, an attorney in the USDA's Office of General Counsel. She asked plaintiff to prepare testimony and to appear as a witness on behalf of the Forest Service, USDA, in hearings to be held by the Environmental Protection Agency regarding the use of herbicides 2, 4, 5–T and Silvex. In a telephone conversation on the following day, April 19, 1980, plaintiff agreed to prepare testimony and to appear as a witness on behalf of the Forest Service.

The circumstances surrounding plaintiff's agreement to testify are, however, in dispute. Plaintiff contends that in the course of their first conversation on April 18, 1980, he informed Ms. Breinholt that his fee for preparing his testimony and for testifying would be $300 per day, plus expenses; that Ms. Breinholt then stated that she did not have authority to make such an agreement, but that she would discuss it with Forest Service officials and call plaintiff back. Plaintiff further alleges that during the second call on April 19, 1980, Ms. Breinholt informed plaintiff that the Forest Service had agreed to his terms and that plaintiff should begin preparing his testimony.

That version of the facts is vigorously disputed by Ms. Breinholt in an affidavit offered in support of defendant's present motion. Ms. Breinholt states therein that at no time during either of the two above-described telephone conversations with plaintiff did she represent to him that he would be paid for his testimony. She states that plaintiff did contact her requesting payment for his services, but that this occurred much later and at some time prior to November 20, 1980. She informed him at that time, she states, that the Office of General Counsel could arrange to reimburse plaintiff only for his travel costs and per diem, but that she would discuss the matter of additional compensation with Forest Service officials. Ms. Breinholt further avers that these officials indicated to her that they would attempt to reach an agreement with plaintiff on his request for additional compensation. Based on this assurance Ms. Breinholt says that she instructed plaintiff to contact Forest Service officials directly regarding his request. Ms. Breinholt asserts that she heard nothing further from plaintiff on the subject, and assumed that he was working with Forest Service officials to resolve the matter.

Plaintiff, in his affidavit, denies that Ms. Breinholt told him to deal directly with Forest Service officials on the issue of compensation. He maintains, to the contrary, that Ms. Breinholt had informed him over the phone during their April 19th conversation that Forest Service officials had agreed to plaintiff's terms.

Plaintiff submitted his prepared written testimony to Ms. Breinholt on October 26, 1980. On November 20, 1980, he called her concerning partial payment for his services to date. Ms. Breinholt denied having agreed to pay plaintiff for his testimony. Thereafter, attempts were made in conversations between plaintiff and a Forest Service contracting official to reach a mutually acceptable agreement on payment for plaintiff's services, but these attempts proved fruitless. Thereafter, Forest Service officials determined that plaintiff's testimony would not be utilized. His prepared written testimony was returned to him sometime in February, 1981.

### Discussion

 It is axiomatic that a motion for summary judgment must be denied if it

depends on the prior resolution of genuine issues of material facts.[1] Moreover, in determining whether or not there are genuine issues as to material facts, the court must consider all facts in the light most favorable to the party opposing the motion[2], and must resolve any doubts on factual issues against the moving party.[3]

As previously stated, plaintiff relies on his own affidavit to the effect that Ms. Breinholt informed him that Forest Service officials had accepted his terms for compensation, and that he should begin preparing his testimony. He argues that this conversation created an express oral contract between him and defendant, or in the alternative, a contract, implied-in-fact. In direct opposition, Ms. Breinholt's affidavit flatly denies that she or any Forest Service official agreed to plaintiff's terms. This would appear to raise genuine issues of material facts which would ordinarily be resolved by a trial and an evaluation of the credibility of the individuals whose recollection of relevant events is in such direct conflict.

 However, even assuming plaintiff's entire factual statement to be correct, it is insufficient to establish an express oral contract or a contract implied-in-fact. This is because he has not shown, nor offered to show, nor demonstrated the ability to show at trial, that Ms. Breinholt had the requisite authority to contract on behalf of the defendant. It has long been established that the United States is not bound by its agents acting beyond their actual authority[4], nor that it is estopped to deny the acts of its agents acting beyond the scope of their actual authority.[5]

Plaintiff argues that it is highly unlikely that neither Ms. Breinholt, nor the superiors within her office to whom she spoke, possess the authority to hire expert witnesses for litigation. Plaintiff cites regulations at 7 C.F.R. § 2.31 entitled "Delegation of Authority to the General Counsel," as clearly implying that attorneys in the Office of General Counsel of the USDA possess the necessary authority to perform normal legal services on behalf of their clients, including the right to hire expert witnesses. But Ms. Breinholt states in her affidavit that she does not have delegated authority to enter into contracts, nor to her knowledge does anyone else in the General Counsel's office. Ms. Breinholt informed Dr. Gratkowski during their initial April 18, 1980 telephone conversation that she lacked such authority, and he confirms this in his own affidavit where he quotes her to that effect. Therefore, even assuming, *arguendo*, that Ms. Breinholt possessed actual authority by reason of her position in the General Counsel's office to enter into contracts, no contract could have resulted because both parties were proceeding on the correct premise that she had no such authority.

 An express contract is an agreement or mutual assent by the parties manifested in words, oral or written.[6] Similarly, before a contract may be implied-in-fact, there must be a meeting of the minds which is inferred from the conduct of the parties, and in light of the surrounding

1. *See, e.g., Southern Louisiana Grain Services, Inc. v. United States,* 1 Cl.Ct. 281, 289 (1982); *News Publishing Co. v. United States,* 218 Ct.Cl. 711, 712, 714 (1978); *Garcia v. United States,* 123 Ct.Cl. 722, 732, 108 F.Supp. 608, 613 (1952).

2. *Akiba South Side Jewish Day School & Open Kitchens, Inc. v. United States,* 221 Ct.Cl. 899, 900, 618 F.2d 124 (1979).

3. *Housing Corp. of America v. United States,* 199 Ct.Cl. 705, 710, 468 F.2d 922, 924 (1972).

4. *See Federal Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 384, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947); *Porter v. United States,* 204 Ct.Cl. 355, 366, 496 F.2d 583, 590 (1974), *cert. denied,* 420 U.S. 1004, 95

S.Ct. 1446, 43 L.Ed.2d 761 (1975). "One who purports to contract with the United States assumes the risk that the official with whom he deals is clothed with actual authority to enter the contract alleged," *Haight v. United States,* 209 Ct.Cl. 698, 538 F.2d 346, *cert. denied,* 429 U.S. 841, 97 S.Ct. 116, 50 L.Ed.2d 110 (1976).

5. *Putnam Mills Corp. v. United States,* 202 Ct.Cl. 1, 9, 479 F.2d 1334, 1338 (1973); *California-Pacific Util. Co. v. United States,* 194 Ct.Cl. 703, 720 (1971).

6. Williston on Contracts, § 3 at 8–9 (1957).

circumstances, showing their tacit understanding.[7] Since both parties understood that Ms. Breinholt lacked authority to enter into contracts, there was no meeting of the minds on either an express or an implied-in-fact contract in the course of their April 18 conversation.[8]

Plaintiff further argues that there remains a factual dispute as to whether Ms. Breinholt thereafter obtained the requisite authority to contract with him. He refers to his own affidavit in which he states that Ms. Breinholt informed him in their April 18 conversation that she would consult with Forest Service officials about payment and then, in the April 19 conversation, where she allegedly stated that the Forest Service had agreed to his terms.

Other than plaintiff's bald assertion in his affidavit, plaintiff has produced no evidence of such an agreement, despite the exhaustion of discovery, and the exchange of responses to the court's pretrial order on liability. Defendant, on the other hand, has submitted the affidavit of Alfred Rivas, a Pesticide Specialist, who was at that time responsible for coordinating procedures between the General Counsel's office and the Forest Service in obtaining expert testimony for the pesticide proceedings. In his affidavit, Mr. Rivas states that the issue of the payment of fees to plaintiff was not raised with him until late in October, 1980, well past the April 19th date on which plaintiff claims that an agreement was reached.

■ Mere assertions by counsel and general allegations which fail to show the facts in detail, together with some specific rebuttal evidence, are not sufficient to defeat a motion for summary judgment.[9] Plaintiff has failed to disclose any evidentiary basis for his contention that Ms. Breinholt obtained authority to contract with him from some unidentified superior.[10]

The essence of plaintiff's position herein is that additional facts *may* show at trial that Ms. Breinholt obtained actual authority to contract with plaintiff. But this conjecture is not enough to successfully oppose a motion for summary judgment. In *Pure Gold, Inc. v. Syntex (U.S.A.), Inc.,* 739 F.2d 624, 627 (Fed.Cir.1984), the court held that "[s]ummary judgment need not be denied merely to satisfy a litigant's speculative hope of finding some evidence that might tend to support a complaint."

■ One of the purposes of a motion for summary judgment is to determine whether or not the opposing party has evidentiary support for his version of the facts.[11] A party opposing summary judgment "must do more than whet the curiosity of the court; he must support vague accusation and surmise with concrete particulars." [12]

As earlier observed, plaintiff has had ample opportunity to obtain materials and affidavits by discovery or otherwise, which raise genuine issues of material facts on the matter of Ms. Breinholt's authority to

**7.** *Baltimore and Ohio R.R.C. v. United States,* 261 U.S. 592, 43 S.Ct. 425, 67 L.Ed. 816 (1923).

**8.** It is therefore unnecessary for us to determine whether an express *oral* contract is ever enforceable against the United States, by reason of 31 U.S.C. § 1501(a). *Narva Harris Constr. Corp. v. United States,* 216 Ct.Cl. 238, 243, 574 F.2d 508, 510 (1978), interpreting 31 U.S.C. § 200(a), the predecessor to § 1501(a), leaves that question open. *But see United States v. American Renaissance Lines, Inc.,* 494 F.2d 1059, 1062 (D.C.Cir.), *cert. denied,* 419 U.S. 1020, 95 S.Ct. 495, 42 L.Ed.2d 294 (1974), holding that "contracts which are merely oral are not enforceable," either by or against the government.

**9.** *Royal Indemnity Co. v. United States,* 178 Ct.Cl. 46, 51, 371 F.2d 462, 465 (1967). *See also*

Rule 56(e) of this court which provides in pertinent part that "an adverse party may not rest upon mere allegations or denials of his pleading, but his response [to a motion for summary judgment], by affidavits or as otherwise provided in this rule, must set forth facts showing there is a genuine issue for trial."

**10.** *See* 6 Moore's Federal Practice ¶ 56.15 at 56–483 (2d ed. 1983).

**11.** *Crawford v. United States,* 3 Cl.Ct. 323, 328 (1983).

**12.** *Applegate v. Top Associates, Inc.,* 425 F.2d 92, 96 (2d Cir.1970). *See also Crawford v. United States,* note 11, *supra,* 3 Cl.Ct. at 328–29.

contract. But he has failed to demonstrate that there is a justiciable issue of fact with respect to her actual authority.

Similar facts were involved in *EWG Associates, LTD. v. United States,* 231 Ct.Cl. 1028 (1982). In that case, the plaintiff was instructed to begin working on a proposed contract. The contract was, however, never approved, and the plaintiff submitted claims for the work completed. The court found that since plaintiff could not show that an official with actual authority had accepted its proposal, nor had instructed plaintiff to begin working on the contract, there was no authorized approval and, therefore, no contract upon which plaintiff could support its claims.

Also on point is *Robert G. Phelps v. United States,* 5 Cl.Ct. 740 (1984). In that case, plaintiff purchased and operated a lounge which was used by the FBI in the course of an investigation. Plaintiff claimed that he was assured by an FBI agent, who had limited authority to reimburse the actual expenses of an investigation, that plaintiff would be reimbursed for any losses at the completion of the operation. Plaintiff incurred substantial losses and the FBI thereafter denied plaintiff's claim. This court granted defendant's motion for summary judgment, finding that plaintiff had failed to produce any facts from which the court could infer that plaintiff had dealt with an agent having authority to bind the government. Plaintiff, it was held, could not rest on an affidavit which merely parroted his pleadings.[13]

Plaintiff's final argument is that it is entitled to recover under the theory of quantum meruit. But it is well settled that a claim based upon quantum meruit rests upon the theory of a contract implied-in-law. This court has no jurisdiction in such cases.[14]

All of the foregoing considered, the defendant's motion for summary judgment is granted, and the petition shall be dismissed.

---

**13.** *See also Jascourt v. United States,* 207 Ct.Cl. 955, *cert. denied,* 423 U.S. 1032, 96 S.Ct. 562, 46 L.Ed.2d 405 (1975).

**14.** *See Merritt v. United States,* 267 U.S. 338, 341, 45 S.Ct. 278, 279, 69 L.Ed. 643 (1925). The Supreme Court stated therein:

The Tucker Act does not give a right of action against the United States in those cases where, if the transaction were between private parties, recovery could be had upon a contract implied-in-law. *See also U.S. Steel Corp. v. United States,* 210 Ct.Cl. 228, 536 F.2d 921 (1976).