**BLAKE CONSTRUCTION CO., INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 556–85C.

United States Claims Court.

Sept. 21, 1987.

---

Sheldon I. Matzkin, Chevy Chase, Md., for plaintiff; Richard D. Corona, of counsel.

Genevieve Holm, with whom were Asst. Atty. Gen. Richard K. Willard, David M. Cohen, Director, and Thomas W. Peterson, Asst. Director, Washington, D.C., for defendant; Audrey Van Dyke and Eugene B. Paulisch, Associate Chief Trial Atty., Dept. of Navy, of counsel.

## OPINION

SMITH, Chief Judge.

This matter came before the court on the Defendant's Motion to Dismiss, or in the alternative, for Summary Judgment. This opinion follows the court's oral ruling issued on February 5, 1987 and paragraph 1 of its February 10, 1987 order. The court issues this follow-up opinion because it believes the question is still of some relevance. The defendant bases its motion on the ground that this court lacks jurisdiction over the instant action. This is due to conduct by the plaintiff which the defendant asserts is a binding election to proceed before the Armed Services Board of Contract Appeals. For the reasons set forth below, the court rejected the defendant's argument and accordingly, the defendant's motion was denied.

### Facts

On June 15, 1983, Blake Construction Co., Inc. (Blake) the plaintiff entered into a contract with the Department of the Navy (Navy) for improvements at the Main Hospital Complex Center, Naval Regional Medical Center, San Diego, California. The contract price was $98,411,000.00.

On or about December 14, 1983, the plaintiff's electrical subcontractor, Steiny & Company, Inc. (Steiny), proceeded to install electrical duct bank conduits at the tunnel corridor area of the project. According to the plaintiff, all work was performed in accordance with the Navy contract drawings and specifications. The Navy advised the plaintiff, on or about December 15, 1983, that the electrical duct bank did not conform with the contract requirement and ordered the removal of all the electrical conduits not installed in conformance with the Navy's interpretation of the contract drawings and specifications. This resulted in the relocation of the concrete encased electrical duct bank.

On December 19, 1983, and again on December 21st, the plaintiff notified the defendant that the aforesaid directive, relating to the electrical conduits, constituted a constructive change and, thus, plaintiff was entitled to additional compensation. The plaintiff submitted its claim for additional compensation in the amount of $3,493,967.00 on March 30, 1984, and certified that claim on October 12, 1984. The contracting officer's adverse final decision dated November 21, 1984, denied the plaintiff's claim.

The key facts upon which this motion turns center upon Blake's mailing of the notice of appeal to the Armed Services Board of Contract Appeals (ASBCA or Board). These facts are as follows:

David J. Lipper, a vice-president of Blake, mailed a notice of appeal to the ASBCA on January 15, 1985. The claim was filed on behalf of Steiny. Mr. Lipper also mailed a copy of that notice to Steiny's counsel, who then notified Blake that Steiny desired to bring the action in the United States Claims Court, not the ASBCA. Upon receiving that advice from Steiny's counsel, the plaintiff ascertained that the notice of appeal had not yet been received by the ASBCA, and made arrangements to retrieve the notice before the appeal was filed and docketed. These arrangements were successful. Plaintiff filed its complaint in this court on September 25, 1985. The case is currently still in discovery.

## Discussion

The defendant's motion raises a novel issue as a result of the unusual set of facts which surround the mailing of the notice of appeal to the ASBCA and its retrieval by the plaintiff prior to the actual filing and docketing of the appeal.

The question upon which the court must focus is whether the mere mailing of a notice of appeal, which is neither filed nor docketed, and which is retrieved by the sender, constitutes a binding election to proceed before the Board so as to deprive this court of jurisdiction. It is the court's view that we must reject the theory that mailing equals filing in every instance, and consequently the court must deny the defendant's motion.

To support its position the defendant cites *Diamond Manufacturing Co. v. U.S.*, 3 Cl.Ct. 424 (1983), and *Prime Construction Co., Inc. v. U.S.*, 677 F.2d 876 (1982) for the proposition that once an election to bring an appeal before a board of contract appeals is made, the contractor cannot change that election. Although this is a correct statement of the law, the question presented by the case at bar, which appears to be one of first impression, is whether Blake could and whether it did successfully retrieve the notice of appeal to the ASBCA. Put another way, what actions of the plaintiff constitute an irrevocable or binding election? Is mere deposit in a mail box sufficient? Or is some type of receipt and docketing by the Board required?

In both cases relied upon by the defendant, the contractor filed its appeal of the contracting officer's final decision with a board of contract appeals. Obviously, in those instances, not only did the plaintiff mail the notice of appeal, but the notice was received, filed, and docketed.

The defendant points to the fact that the ASBCA has adopted a rule which permits the mailing date *to serve as the filing date*.[1] The court, however, must examine the meaning and policy reasons for such a rule. In doing so, a review of Board decisions dealing with these situations is instructive for determining the purpose of the rule. The policy which underlies the rule appears to be for the protection of those contractors who properly mail an appeal which does not reach or does not timely reach the appropriate board. This supports a basic philosophic commitment of our system of law; that is, it is preferable to decide a case on its merits, rather than upon a purely procedural ground. From this long standing commitment stems the creation of the Court of Chancery in England prior to the reign of Henry II, as well as our whole concept of equity. *H. McClintock, Principles of Equity* § 2 (2d ed. 1948). Underlying this notion is the very purpose of a judicial system; to help parties resolve real disputes. Procedural rules serve the very important, but subsidiary purpose, of allowing the courts to function effectively in their primary role as institutions for the resolution of social, political and economic disputes.

The board decisions the defendant offers in support of its position are also not persuasive because the question of retrieval is not addressed. On the contrary, the board cases focus upon those circumstances in which a board will consider an appeal timely filed, which on its face, appears untimely. For example, in *Pacific Steel Building Systems, Inc.*, 83–1 BCA (CCH) ¶ 16,362 (1983), the ASBCA considered the contractor's notice was timely filed even though the contractor *mailed* his notice of appeal on the 90th day after he received the adverse final decision. The Board held the "filing" was timely upon mailing even though it was not actually filed with the Board. However, in that case there was no attempt made by the contractor to retrieve the notice or prevent the filing of the ap-

---

1. The Office of Management and Budget, Office of Federal Procurement Policy Final Uniform Rules of Procedure for Boards of Contract Appeals Under the Contract Disputes Act of 1978 provides at ¶ 102, Rules: "1. *Appeals, how taken.* (a) Notice of an appeal shall be in writing and mailed or otherwise furnished to the Board within 90 days from the date of receipt of a contracting officer's decision. A copy thereof shall be furnished to the contracting officer from whose decision the appeal is taken."

peal. In *Visutron, Inc., Security Electronics* 84–1 BCA (CCH) ¶ 17,022 (1984), the Board determined the appeal was timely, despite the expiration of the statutory ninety day time limit, since the contractor produced an affidavit of mailing which documented that a timely mailing had been made, even though it was never received by the Board. The Board accepted the contractor's evidence that it had timely mailed the notice, even though the Board had not received that original notice.

In all of these cases it is apparent that two circumstances existed in conjunction. The contractor mailed a notice of appeal *and* the contractor intended to file at the board when the notice of appeal arrived. This conjunction of the physical act with the proper intention is a necessary requirement of a binding election under the CDA, just as it is a necessary element in many legally significant actions. For example: domicile must be established by both the physical act of being present in the jurisdiction, combined with an intent to establish domicile. *See Martinez v. Bynum,* 461 U.S. 321, 331, 103 S.Ct. 1838, 1844, 75 L.Ed.2d 879 (1983). A conspiracy requires both the mental state and some overt act. *United States v. Reese,* 775 F.2d 1066 (CA 9th Cir.1985). A contractual relationship needs both the "meeting of the parties' minds" and some explicit or implicit action to exist. *Gratkowski v. United States,* 6 Cl.Ct. 458, 461–462 (1984). Thus, the position that mailing equals filing in every instance is one which this court cannot accept. It would be a manifest injustice to contort the Board rule, which seeks to protect a party which has attempted to file an appeal, into a rule that works a hardship. Certainly, this was not the intent of the rule.

However, there is another aspect of the theory which the government propounds. It is further contended that to allow a docket clerk at the Board to return a mailed notice of appeal would be allowing such a clerk to control the jurisdiction of the board. This, however, turns a simple case into a complex and metaphysical question. By the government's theory, election ceases to be a descriptive term and becomes an almost mystical communion with the board the moment an appeal enters the mail box slot.

Logic dictates that if "election" is to be a useful concept it must be descriptive of some underlying reality. That reality is at a minimum the process of receipt and acceptance by the clerk of the board. In the instant case that did not occur. Before the notice reached the clerk's offices, the plaintiff informed that office that it did not wish the notice to be filed, but rather it should be held at the counter so plaintiff could retrieve it. This subsequently occurred. Under traditional property conceptions the clerk thus became a "gratuitous bailee" for the plaintiff. *See generally Rigby v. Suburban Rendco, Inc.,* 548 F.Supp. 202 (D.C. Del.1982). While this characterization is not dispositive, it illustrates the practical situation in this case.

By not accepting the document, the board clerk is doing no more than recognizing that this document is not an attempt to exercise the board's jurisdiction. Presumably, that is a threshold power everyone in any clerk's office has. If someone brings a newspaper or a gum wrapper into a court clerk's office it is not an exercise of judicial discretion to fail to file it. Likewise, when the sender of a document calls the clerk and advises that a document was sent, but it is not the sender's intention to file the document, and please return it, it is unreasonable to suggest that the clerk's office has no power to comply.

Of course, the situation might be radically different if it were shown that there was some specific reason or rule which required every piece of material that comes into a clerk's office to be filed regardless of the intention of the sender or the analysis of the clerk. However, the government has shown no such reason or rule to exist in the present case. In fact, the government's position goes further than the extreme position of saying everything brought into the clerk's office must be filed. Its position would seem to mandate every document dropped into a mail box and addressed to a board *is* filed as of that moment forever. Statute and regulation certainly could impose such a strange rule,

however, it is quite clear they have not. While Board cases, unlike our own,[2] have removed the risk of losing a filing in the mail from those risks which the plaintiff must bear, this is not a reason for turning every mail box into a board clerk's office where an irrevocable election takes place, occasionally by accident.

### Conclusion

Based upon the foregoing reasons, the court denied the Defendant's Motion to Dismiss, or in the Alternative for Summary Judgment.

No Costs.

**2.** The relevant portion of the Contract Disputes Act provides that in order to bring an action in the United States Claims Court, the complaint, "shall be filed within twelve months from the date of the receipt by the contractor of the decision of the contracting officer concerning the claim." 41 U.S.C. § 609(a)(3); *Shaver Partnership v. United States*, 11 Cl.Ct. 594 (1987) (contractor's suit barred by statute of limitations, filing nine days late); *Kasler/Continental Heller/Fruin Colmon v. United States*, 9 Cl.Ct. 187 (1985) (contractor's suit barred by statute of limitations, filing one day late); *Hawkins v. United States*, 1 Cl.Ct. 221, 223 (1983) (contractor's suit barred by statute of limitations, filing four days late).