GRO–GREEN PRODUCTS, INC.,
Twin Fair, Inc.

v.

The UNITED STATES.

No. 2–83L.

United States Claims Court.

Nov. 2, 1983.

John D. Conner, Jr., Washington, D.C., for plaintiffs. Bonnie A. Sullivan and McKenna, Conner & Cuneo, Washington, D.C., of counsel.

Diane L. Donley, Washington, D.C., for defendant. Asst. Atty. Gen., Carol E. Dinkins and Alice Wegman, Atty. U.S. Environmental Protection Agency, Washington, D.C., of counsel.

OPINION ON PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT and DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

WHITE, Senior Judge.

The plaintiffs in this action are Gro-Green Products, Inc. (Gro-Green), a manufacturer and seller of home and garden products, and Twin Fair, Inc. (Twin Fair), a retail company that purchases home and garden products from Gro-Green and then sells the products at retail.

The plaintiffs seek indemnification for losses allegedly suffered from the suspension and later cancellation, by the Administrator of the Environmental Protection Agency (EPA), of registrations of pesticide products containing silvex, a herbicide. The plaintiffs contend that they are justly entitled to recover indemnification from the

United States for their losses, under section 15 of the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA), as amended (7 U.S.C. § 136m (1982)).

In addition, plaintiff Gro-Green asserts an additional claim under section 19 of FIFRA (7 U.S.C. § 136q (1982)) for storage and disposal costs allegedly incurred as a consequence of the EPA's action.

The action is now before the court on: (1) the plaintiffs' motion for partial summary judgment on the issue of the Government's liability to the plaintiffs (this motion, if granted, will leave the determination of the amount of the plaintiffs' damages for future determination); and (2) the defendant's motion for summary judgment, which seeks a dismissal of the complaint.

For the reasons stated subsequently, it appears that the plaintiffs are entitled to indemnification, but that plaintiff Gro-Green is not entitled to recover for its storage and disposal costs.

*Background Information*

Gro-Green has held a New York State registration since 1970 for its product known as "Weed and Feed 60." Weed and Feed 60 is a dry-formulation home and garden fertilizer that contains the herbicide silvex. Gro-Green has annually renewed its New York registration for Weed and Feed 60.

Before FIFRA's amendment in 1972 by Public Law No. 92–516 (86 Stat. 973), the EPA regulated, and required the registration of, only pesticides distributed in interstate commerce. Pesticides distributed intrastate were regulated under the various state laws. Thus, before 1972, Gro-Green was not a registrant under FIFRA.

Section 3(a) of FIFRA, as amended in 1972 (7 U.S.C. § 136a(a) (1982)), for the first time required EPA registration of pesticides distributed in intrastate commerce, as well as pesticides distributed in interstate commerce.

To support a pesticide registration, a manufacturer must show (among other things) that the product will not "cause unreasonable adverse effects on the environment" (7 U.S.C. § 136a(c)(5)(C) (1982)). Once a pesticide has been registered, the registration is subject to suspension and cancellation in accordance with statutory provisions in FIFRA (7 U.S.C. § 136d(c)–(f) (1982)) prescribing standards and procedures.

In recognition of the extension of EPA's regulatory authority to the intrastate distribution of pesticides, the EPA promulgated certain regulations. These regulations, which were effective on August 4, 1975, required registrants of pesticide products formerly registered under state law for intrastate distribution to submit to the EPA, within 60 days after August 4, 1975, a "Notice of Application for Federal Registration for an Intrastate Pesticide Product." 40 C.F.R. § 162.17 (1982). The preamble to the October 16, 1974 Federal Register notice that proposed the regulations advised state registrants that the "[t]imely filing of this notice will satisfy those requirements of FIFRA, as amended, which can be satisfied only by Federal registration * * *." 39 Fed.Reg. 36,973, 36,976 (October 16, 1974).

On August 29, 1975, which was within the prescribed 60-day period, Gro-Green filed with the EPA the required "Notice of Application," etc., with respect to Weed and Feed 60. The notice was acknowledged by EPA on November 17, 1975, by means of a form captioned "Confirmation of Federal Status." Gro-Green was assigned an EPA company number, 06665, and an EPA accession number, 09475. No further communication from the EPA was received by Gro-Green between November 17, 1975, and February 28, 1979. During this interval of more than 3 years, Gro-Green continued to manufacture and sell Weed and Feed 60.

On February 28, 1979, the Administrator of EPA ordered the emergency suspension of certain uses of silvex, including its home and garden use. 44 Fed.Reg. 15,897 (March 15, 1979). The EPA later cancelled the registrations of pesticide products containing silvex. Copies of the suspension and

cancellation orders were sent by EPA to Gro-Green.

There is no contention by the plaintiffs that the EPA, in suspending and canceling registrations of pesticide products containing silvex, violated any of the FIFRA provisions governing such matters.

As of February 28, 1979, Gro-Green had on hand a quantity of Weed and Feed 60 which it had manufactured but had not yet distributed, and Twin Fair had on hand a quantity of Weed and Feed 60 which it had acquired from Gro-Green and had not yet sold at retail. Gro-Green thereafter recalled from Twin Fair the Weed and Feed 60 which it had previously sold to Twin Fair. No sales of Weed and Feed 60 were made by Gro-Green or by Twin Fair after Gro-Green received copies of the suspension and cancellation orders from the EPA.

During 1979 and 1980, settlement agreements were entered into between the EPA and certain federal registrants of silvex pesticides. In one provision of the agreements, the federal registrants' previous requests for a hearing concerning cancellation of the participants' federal silvex registrations were withdrawn. The agreements established a procedure for the submission by the registrants, and the review by the EPA, of indemnification claims. The agreements also established a procedure for the acceptance by the EPA of certain silvex pesticides for safe disposal.

Gro-Green sent a letter to the EPA dated July 26, 1979, requesting that the company be permitted to enter into a settlement agreement with the EPA. The EPA informed Gro-Green on January 11, 1980, that Gro-Green's application for federal registration was denied; that the EPA could not enter into such an agreement with Gro-Green because the latter was not a federal pesticide registrant; and that Gro-Green was not entitled to indemnification, but that the EPA would provide Gro-Green with the same assistance in disposing of its product that was provided to federal registrants. Gro-Green did not promptly take advantage of EPA's offer, and its silvex stock is still in storage.

Repeated requests by Gro-Green in 1982 for indemnification relative to its stock of silvex pesticides were denied by the EPA.

The plaintiffs subsequently filed a complaint in this court on January 5, 1983. This was followed by the filing of the motions that are now before the court. Oral arguments have been made by the parties before the court.

### The Indemnification Issue

The plaintiffs' claim for indemnification is founded on section 15 of FIFRA (7 U.S.C. § 136m (1982)). Subsection (a) of this section provides in pertinent part that if the Administrator of the EPA notifies a "registrant" that he has suspended the "registration" of a pesticide, and if the "registration" of the pesticide is later canceled, and if "any person" who owned a quantity of such pesticide immediately before the suspension notice suffers losses, then the Administrator shall make an indemnity payment to "such person."

The controversy in this case revolves around the terms "registrant," "registration," and "person."

The defendant contends that section 15 of FIFRA provides only for the indemnification of federal registrants; that Weed and Feed 60 never received a federal registration; that the plaintiffs were not federal registrants; and, accordingly, that the prerequisites for indemnification under FIFRA were not met by the plaintiffs.

The defendant's restricted view of FIFRA's indemnification provision is inconsistent with the language of the provision. Section 15 does not refer to the indemnification of federal registrants only. On the contrary, it states (with an exception not pertinent here) that "any person" who, at the time when the registration of a pesticide was suspended, owned a quantity of the pesticide, and who suffers losses as a result of the suspension and cancellation of the registration, is entitled to indemnification. Both Gro-Green and Twin Fair are such persons.

Furthermore, the legislative history of FIFRA indicates that the indemnification provision of the legislation should not be restricted to federal registrants only. During the course of the debate on the bill that later was enacted as FIFRA, Representative Kyl, of Iowa, who was a member of the House Committee on Agriculture, which reported out the bill, stated in part as follows:

Mr. Chairman, all the indemnification provision in this bill says is that if the Government, having approved a product for use and having approved it for distribution and having approved the manufacture, if that same Government then on a day certain says, "Thou shalt not any further use this product which we said was all right to use," then the individual who owns some of this product shall be indemnified. * * * [117 Cong.Rec. H10, 755 (daily ed. Nov. 9, 1971.]

As Representative Kyl indicated, the purpose of section 15 of FIFRA is to provide for the indemnification of *any person* who is faced with sudden and unexpected losses because the Federal Government has prohibited the sale and use of a pesticide which the Government previously authorized for sale and use.

It should be noted, in this connection, that the EPA's suspension and cancellation orders did not distinguish between federal and state registrations of silvex. They simply prohibited the sale and use of all silvex products which the EPA had previously sanctioned pursuant to FIFRA. The orders were clearly applicable to Weed and Feed 60 because it contained the prohibited pesticide silvex, and its sale and use had previously been sanctioned by the EPA through the acceptance of Gro-Green's "Notice of Application" concerning Weed and Feed 60, the issuance to Gro-Green of a Confirmation of Federal Status, the assignment to Gro-Green of an EPA company number and an EPA accession number, and permitting Gro-Green to continue the manufacture and sale of Weed and Feed 60 without hindrance for more than 3 years, until the sale of all pesticide products containing silvex, including Weed and Feed 60, was prohibited.

It is concluded that each of the plaintiffs, Gro-Green and Twin Fair, was a "person" who qualified for indemnification under a proper construction of section 15 of FIFRA, when the sale of all silvex products which the EPA had previously sanctioned was prohibited by the EPA on and after February 28, 1979.

Moreover, when the EPA suspends and later cancels registrations of a pesticide product, and thereby prohibits the further sale of a product which previously has been sold lawfully, it would be discriminatory and violate principles of fairness and justice if federal registrants were indemnified for the product on hand while other persons similarly subjected to losses were denied indemnities. The defendant proposes in this case a construction of section 15 of FIFRA that would produce such a result. Accordingly, the defendant's argument should be rejected in favor of the reasonable and more fair construction of section 15 previously outlined. *Cf. Western Electric Co. v. United States,* 215 Ct.Cl. 100, 124–25, 564 F.2d 53, 66 (1977).

Also, it appears that Gro-Green was actually a federal registrant, albeit an interim registrant and not a "full" registrant. Gro-Green acquired this status by timely filing the required "Notice of Application for Federal Registration for an Intrastate Pesticide Product" concerning Weed and Feed 60, pursuant to an official notification that the "[t]imely filing of this notice will satisfy those requirements of FIFRA, as amended, which can be satisfied only by Federal registration"; by receiving from the EPA a "Confirmation of Federal Status"; by being assigned an EPA company number and an EPA accession number; and by being permitted by the EPA to continue the manufacture and sale of Weed and Feed 60 without hindrance for more than 3 years, until all sales of pesticide products containing silvex were prohibited by the EPA.

In this connection, it is pertinent to note that when the EPA sent copies of the silvex

suspension and cancellation orders to Gro-Green, the latter was addressed as "registrant."

That Gro-Green was not a "full" federal registrant is indicated by the circumstances that the "Confirmation of Federal Status" form which the EPA sent to Gro-Green contained the seemingly contradictory printed statement that "acceptance does not constitute federal registration"; and a pertinent regulation stated that each state registrant who submitted the required "Notice of Application" would subsequently be notified when to submit "a full application statement for Federal registration." 40 C.F.R. § 162.17 (1982). It apparently was contemplated that the "Confirmation of Federal Status" was for an interim period only, and that, at a time to be determined by the EPA, interim registrants of pesticide products for intrastate sale would be notified to submit "full application statements"; and that, on the basis of the data submitted, the EPA would either issue a "full" registration to supersede the interim registration, or deny the application and terminate the interim registration. In the present case, the EPA never notified Gro-Green as to when it should submit the anticipated full application statement; and Gro-Green continued to operate under the interim registration for more than 3 years, until all registrations of pesticide products containing silvex, including Weed and Feed 60, were suspended and later cancelled.

In summary, the plaintiffs are entitled to recover on their claim for indemnification.

### The Storage and Disposal Issue

■ In addition to the plaintiffs' claim for indemnification, the plaintiff Gro-Green asserts another claim under section 19 of FIFRA (7 U.S.C. § 136q (1982)) for storage and disposal costs incurred in connection with the Weed and Feed 60 that was on hand and could not be sold after the suspension and cancellation by the EPA of silvex registrations.

Section 19 provides in part as follows:
> The Administrator shall * * * accept at convenient locations for safe disposal a pesticide the registration of which is canceled * * * if requested by the owner of the pesticide.

After the EPA canceled registrations of pesticide products containing silvex, the EPA offered to dispose of Gro-Green's Weed and Feed 60 at federal expense. This was the same assistance which the EPA provided to other registrants of silvex products. Gro-Green, however, did not at the time avail itself of the opportunity to participate in the federal disposal program.

More than 2½ years after the EPA's initial offer to dispose of Gro-Green's Weed and Feed 60, Gro-Green requested the EPA to dispose of the Weed and Feed 60. By that time, however, the federal disposal program for silvex pesticides had been completed. The EPA informed Gro-Green that the disposal program had been completed, that any disposal of Weed and Feed 60 by the EPA would require a new government contract for the procurement of disposal services, and, therefore, that the EPA could no longer dispose of Gro-Green's Weed and Feed 60 at federal expense.

In view of the unjustified delay on the part of Gro-Green in accepting the EPA's offer to dispose of Weed and Feed 60 at federal expense, it is concluded that the EPA did not err in declining to provide the assistance belatedly requested by Gro-Green.

### Conclusion

For the reasons stated in the opinion, the court concludes that there is no genuine issue as to any material fact, that the plaintiffs are entitled to a judgment as a matter of law on their claim for indemnification, and that the defendant is entitled to a judgment as a matter of law on plaintiff Gro-Green's claim for the recovery of storage and disposal costs.

The plaintiffs' motion for partial summary judgment is granted insofar as their claim for indemnification is concerned, and denied insofar as plaintiff Gro-Green's claim for the recovery of storage and disposal costs is concerned.

The defendant's motion for summary judgment is denied insofar as the plaintiffs' claim for indemnification is concerned, and granted insofar as plaintiff Gro-Green's claim for the recovery of storage and disposal costs is concerned.

The amount of the plaintiffs' recovery on their claim for indemnification will be determined in subsequent proceedings under Rule 42(c).

IT IS SO ORDERED.