BLACK LEAF PRODUCTS CO., et al., Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 315–82L.

United States Claims Court.

Jan. 9, 1984.

Robert L. Ackerly, Washington, D.C., for plaintiff. Sachs, Greenebaum & Tayler, Washington, D.C., of counsel.

Diane L. Donley, Washington, D.C., with whom was Asst. Atty. Gen. F. Henry Habicht, II, Washington, D.C., for defendant.

## ORDER

NETTESHEIM, Judge.

Plaintiff,[1] a registrant of pesticides under the Federal Insecticide, Fungicide, and Rodenticide Act, 7 U.S.C. §§ 136–136y (1982) (the "FIFRA"), sues to enforce an agreement with the Environmental Protection Agency (the "EPA"), *inter alia*, settling plaintiff's claim to be indemnified under 7 U.S.C. § 136m for the cancellation of a pesticide registration held by plaintiff. This case was transferred for decision on plaintiff's motion for partial summary judgment on the issue of the indemnification payment. Defendant opposes.

## FACTS

7 U.S.C. § 136a(a) prohibits the distribution of pesticides unless they have been registered with the EPA. Such registration is subject to cancellation under standards and procedures set forth in section 136d(b)–(f). Section 136m requires the EPA to indemnify persons suffering loss as a result of such cancellations. This case is one of several arising from indemnification claims that ensued when the EPA cancelled registrations of pesticides containing the herbicide silvex, which was found to present an imminent hazard under section 136d(c)(1). See *Gro-Green Products, Inc. v. United States,* 3 Cl.Ct. 639, 641 (1983) (WHITE, S.J.), for a treatment of the statutory and factual background of this case.

Plaintiff was entitled to a hearing under section 136d(b) to challenge the cancellation of its registration, but on November 19, 1979, reached an Agreement Regarding Suspension and Cancellation of Certain Silvex Pesticides (the "Agreement") with the EPA pursuant to section 5 of the Administrative Procedure Act, 5 U.S.C. § 554 (1982), under which plaintiff withdrew its request for a hearing and acquiesced in the cancellation. In return, the EPA agreed on a formula for computing "the cost of the pesticide" under the indemnification provisions of section 136m according to which plaintiff would receive, for pesticides in its possession, 70 percent of the price at which it could have sold the product to distributors and, for pesticides which it retrieved from customers, the invoice price of the product, plus 15 percent to cover handling costs. The Agreement also made arrangements for plaintiff to assist the EPA in carrying out the latter's responsibility under section 136q(a) to safely dispose of the pesticides.

Plaintiff's petition alleges that the EPA failed to cooperate in the manner provided for under these arrangements and also failed to provide a convenient storage site as required by section 136q(a). As a result, plaintiff claims that it incurred extra storage, shipping, and related costs, for which it also seeks recovery.

On October 21, 1981, the EPA notified plaintiff that it had computed the indemnification amount owing plaintiff, pursuant to the agreed formula, to be $186,913.92. The letter of notification continued: "However, as you have been previously informed, EPA has no funds available to pay any indemnification claims, and the Agency does not expect to obtain any such funds. Accordingly, we will continue to hold these claims in abeyance pending any change in this situation."

## DISCUSSION

When a motion for summary judgment is made and supported pursuant to RUSCC

---

1. In addition to the lead plaintiff, there are 15 distributor plaintiffs and 96 retailer plaintiffs, customers of the lead plaintiff. Because the claims are all based on a contract between defendant and the lead plaintiff alone, which has acted as agent for the others, the term "plaintiff" will be used herein.

56(c), as is plaintiff's, RUSCC 56(e) commands that a party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." *See Lehner v. United States,* 1 Cl.Ct. 408, 413 (1983) (NETTESHEIM, J.) (citing cases).

The Government does not dispute the authenticity of the Agreement; it admits that the cancellation and suspension of the silvex registration to prevent an imminent hazard give rise to liability under 7 U.S.C. § 136m; and it does not dispute the EPA's October 20, 1981 statement that its "final determination of the total appropriate claim for Black Leaf and its customers is $186,-913.92." Defendant nonetheless resists plaintiff's motion for partial summary judgment for the indemnification payment on the ground that the extent of liability is disputed.

██ Defendant makes two arguments. The first is that "the instant action represents a claim against the United States, not the agency, arising under the Act." Def's Opp. at 9. According to defendant, plaintiff has failed to demonstrate a right to indemnification under the terms of section 136m(b)(1), as opposed to any such right under the Agreement with the EPA, and the issue of the United States' liability therefore is presented *de novo.* This argument is bizarre if defendant actually contends that a settlement agreement with an agency of the United States can be avoided by the Government's taking the position in court that the agreement was with an agency, not the United States. Were this the case, no settlement agreement with any agency of the United States could be enforced in this court. If a party settling with a government agency comes into court on the settlement agreement, his action is not transmuted from a claim against the agency to one against the United States; rather, his claim always was against an agency of the United States and does not assume a different character once a party

invokes the aid of a court to secure its performance. Of course, the settlement contract cannot be enforced if it is *ultra vires.*

Defendant's second argument is that the contract is *ultra vires:*

> Since there has been no proof, nor even allegation, that the Agreement formula [sic] represent the *actual* "cost of the pesticide," these formulas are totally irrelevant to the present case.... The amount of the indemnification to which plaintiffs are entitled is fixed by *statute,* not by EPA; no agreement reached with EPA employees or representations made by agency employees can expand the scope of the United States' liability under ... [section 136m(b)(1)].

Def's Opp. at 9–10 (emphasis in original).

7 U.S.C. § 136m(b)(1) provides:

> *In general.*—The amount of the indemnity payment under subsection (a) of this section to any person *shall be determined on the basis of the cost of the pesticide* owned by such person immediately before the notice to the registrant referred to in subsection (a)(1) of this section; *except that in no event shall an indemnity payment to any person exceed the fair market value of the pesticide* owned by such person immediately before the notice referred to in subsection (a)(1) of this section.

(Emphasis added.)

██ Defendant implies that the compromised indemnity figure is unlawful because it represents an amount in excess of the actual cost of the pesticide. "By its express language, the Act states that the indemnification payment shall be the 'cost of the pesticide.' 7 U.S.C. 136m(b)." Def's Opp. at 9. This assertion is incorrect. The statute does not equate the indemnification to the cost of the pesticide. Section 136m(b)(1) bases the indemnification payment on the cost of the pesticide, which amount shall not exceed the fair market value of the pesticide at the relevant time.

Defendant does not aver that the formulas it summarizes exceed this statutory ceiling.[2]

■ Defendant avers, "An FBI audit is currently underway on the issue of actual costs. However, counsel for defendant has been informed by the FBI that the lead plaintiff has unusually incomplete records and that an audit is likely to take longer than it has in the other similar cases that have been before this Court...." Def's Opp. at 12 n. 5. No affidavit relieves this assertion from its status as hearsay, even assuming that the audit encompassed the correct standard; nor has defendant made any effort to inform the court of developments on the audit, despite the fact that the referenced statement was made in a pleading filed over one year ago.

■ Defendant's opposition—unsupported by affidavit, other evidentiary matter, or even one case cited to enhance its legal arguments—cannot prevent a grant of partial summary judgment in plaintiff's favor. *See Asberry v. USPS*, 692 F.2d 1378, 1382 (Fed.Cir.1982).

## CONCLUSION

■ Based on the foregoing and the court having determined that there is no just reason for delay in entering judgment in plaintiff's favor,

IT IS ORDERED, as follows:

1. Plaintiff's motion for partial summary judgment is granted.

2. Pursuant to RUSCC 54(b), the Clerk of the Court shall enter judgment for plaintiff in the amount of $186,913.92.[3]

3. Pursuant to RUSCC 1(a)(2) and 77.-1(a), adjudication of the remaining claims for storage and related costs shall proceed on an expedited basis. The parties shall be prepared to propose an expedited schedule for disposition of these claims at a status

conference to be held at 10:00 a.m. on Friday, January 20, 1984, in the National Courts Building, 717 Madison Place, N.W., Washington, D.C.

Plaintiff shall have its allowable costs, but application therefor shall be deferred until the case finally is resolved.

2. It is true that section III B. of the Agreement defines "'the cost of the pesticide'" as the amount of the indemnification payment for purposes of the Agreement. Defendant, however, does not raise any genuine issue that the payment based on the definition employed in the Agreement exceeds the statutory ceiling of fair market value.

3. Although plaintiff sought interest pursuant to 41 U.S.C. § 611 (Supp. V 1981), plaintiff failed to comply with 41 U.S.C. § 605(a), (c), thereby rendering plaintiff ineligible for such an award.