**VITRO ELECTRONICS**

v.

**The UNITED STATES.**

No. 5–66.

United States Court of Claims.
March 14, 1969.

---

13. *Terteling* indicates that a misrepresentation claim may or may not survive a "changes" claim, depending on the facts.

J. D. Clark, Sr., Washington, D. C., attorney of record, for plaintiff John Douglas Clark, Jr., Washington, D. C., of counsel.

Steven L. Cohen, with whom was Asst. Atty. Gen. William D. Ruckelshaus, for defendant Katherine H. Johnson, Washington, D. C., of counsel.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

## OPINION

PER CURIAM:

This case was referred to Trial Commissioner Richard Arens with directions to make findings of fact and recommendation for conclusions of law under the order of reference and Rule 57(a). The commissioner has done so in an opinion and report filed on June 7, 1968. Exceptions to the commissioner's findings of fact, opinion and recommended conclusions of law were filed by plaintiff and the case has been submitted to the court on oral argument of counsel and the briefs of the parties. Since the court is in agreement with the commissioner's opinion, findings and recommended conclusion of law, as hereinafter set forth, it hereby adopts the same as the basis for its judgment in this case. Therefore, plaintiff is not entitled to recover and the petition is dismissed.

ARENS, Commissioner:

This case involves a radio receiver, one of several which plaintiff delivered from its plant in Silver Spring, Maryland, to the Department of the Air Force at Kelly Air Force Base, San Antonio, Texas, under a negotiated supply contract entered into on April 27, 1962, at a unit price of $3,510. The receiver in question was, upon inspection by defendant, found to be damaged, and was, at plaintiff's suggestion, returned to and replaced by plaintiff under a warranty clause of the contract. Plaintiff claims that it is entitled to recover from defendant the amount of the damage to the receiver on various theories hereinafter considered.

Defendant not only takes issue with plaintiff on the merits of its claim, but asserts that plaintiff has no standing in this court because it did not pursue the administrative remedy provided under the disputes article of the contract. Since this assertion, if found to be valid, would be dispositive of the case at the outset, we consider it first. It is clear that under the facts, which are here capsuled but detailed in the accompanying findings, the controversy did not come within the purview of the disputes article and that under the pronouncements of this court in Universal Ecsco Corp. v. United States, 385 F.2d 421, 181 Ct.Cl. 10 (1967), plaintiff is now entitled to an adjudication in this court.

On September 10, 1962, plaintiff's agent, Roadway Express, Inc. (hereinafter referred to as Roadway), delivered the receiver to the receiving station at Kelly Air Force Base where defendant's agent acknowledged receipt thereof, without exception, on a copy of the freight bill. Shortly thereafter, in accordance with the established procedure upon receipt of technical equipment, defendant's

engineering laboratory division was notified so that an inspection by a laboratory technician would be made.

On September 13, 1962, due to a combination of clerical mistakes which occurred at the Base, an intrabase form DD 250 was filled out in which it was erroneously stated that the receiver had been inspected and approved by the engineering laboratory division, that the receiver conformed to the contract and was accepted without exceptions. The form DD 250 was then routed to defendant's finance office for payment which was made on December 14, 1962. It does not appear that the form DD 250 was sent as a matter of established procedure to the consignor of equipment or that it was sent to plaintiff.

In the meantime, on September 18, 1962, Mr. Joe Bean, a technician of defendant's engineering laboratory division, broke the original seals and opened the three separate containers in which the receiver was packaged. He noticed that one of the meters was out of place and that there was only one dial where there should have been two. On removing the receiver from the packaging and removing the top of the receiver, he noticed that a meter was loose and that a tuning unit was out of place. Since he concluded that the defects which he noticed were sufficient to warrant rejection of the receiver, Mr. Bean did not look for other defects in it, but thereupon rejected the receiver. Two days later, on September 20, 1962, he signed a Government form DD 6 (report of damaged or improper shipment) in which it was noted that there was a deficiency in the preservation or packaging of the receiver and that a meter and inductor had been shifted out of position. The form DD 6 contained spaces for an indication of whether the carrier (Roadway) had been notified or had inspected the damage, but these spaces were not marked. A copy of this form DD 6 as filled out showed plaintiff as addressee and was sent to and received by plaintiff.

On December 19, 1962, Staff Sargeant Albert Johnson, who was in charge of the receiving station at Kelly Air Force Base, telephoned plaintiff's superintendent of manufacturing, engineering and production control, Mr. Robert Ellenberger, regarding the receiver and stated that it had been paid for by defendant inadvertently. Mr. Ellenberger acknowledged that plaintiff had received a copy of the form DD 6 regarding the receiver and stated that since the receiver was still under warranty, defendant should return it to plaintiff for repair or replacement.

On December 21, 1962, defendant shipped the receiver back to plaintiff via another carrier, Railway Express Agency, on a Government bill of lading. After its receipt at plaintiff's plant on January 2, 1963, the receiver was, on January 25, 1963, unpacked in the presence of a Roadway (the original carrier) inspector and plaintiff's agents who took photographs of it. Thereafter, on February 18, 1963, plaintiff's service section recommended that the receiver not be repaired because the only part of worth was a certain section which was valued at $250.

Thereafter, plaintiff shipped to defendant a replacement for the receiver and filed a claim for $2,140 against Roadway which declined payment on the ground that:

> We tendered a shipment to your customer at San Antonio, Texas, with shipping container apparently in good condition and no visible signs of damage or negligence and a clear receipt was given to us, September 1962.

> This shipment then was in the possession of your customer for several months after which time it was returned by railway express, another carrier, and it was not until January 25, 1963 that our company was asked to make an inspection.

At the trial the testimony produced by both plaintiff and defendant was to the effect that there was no additional damage to the receiver while it was being returned to plaintiff.

■ We come then to a consideration of the various theories which from time

to time have been advanced by plaintiff as a basis for recovery:

(1) *By accepting the receiver from the delivering carrier, defendant foreclosed an action by plaintiff against the carrier.* Plaintiff has cited no authority to support this theory; nor has plaintiff established that defendant owed a duty to advise Roadway, the delivering carrier, of the damage which the evidence clearly establishes was not evident except upon the subsequent opening of the packaging.[1]

▉▉▉ (2) *Defendant did not give plaintiff timely notice of the damage to the receiver.* Plaintiff cites Cudahy Packing Co. v. United States, 75 F.Supp. 239, 109 Ct.Cl. 833 (1948), in which this court ruled that a delay of over two months by the War Department in notifying the plaintiff therein of the rejection of eggs which had been delivered to and inspected by defendant was unreasonable and that the plaintiff was entitled to recover the purchase price of the eggs. The court observed that the eggs "were a perishable commodity, obviously intended for current consumption by the troops * * *." In the instant case, plaintiff premises its theory on the assumption that it had no notice of the damage to the receiver until December 19, 1962, when Staff Sergeant Johnson telephoned plaintiff's Mr. Ellenberger. The evidence establishes, however, that the form DD 6 which noted the defects in the receiver had been filled out by defendant's Mr. Bean on September 20, 1962, and sent to plaintiff, and that Mr. Ellenberger acknowledged that plaintiff had receiverd it. There is no evidence that the form DD 6 was not processed to plaintiff promptly. Although paragraph

5(c) of the General Provision of the contract provides that acceptance or rejection shall be made as promptly as practicable after delivery, the clause next following reads:

> but failure to inspect and accept or reject supplies shall neither relieve the Contractor from responsibility for such supplies as are not in accordance with the contract requirements nor impose liability on the Government therefor.

It is obvious that defendant's notice to plaintiff of the damage to the receiver was timely. It would appear, moreover, that by voluntarily sending the replacement receiver under the contract warranty provisions, plaintiff waived the question of timely notice. Copco Steel & Engr. Co. v. United States, 341 F.2d 590, 169 Ct.Cl. 601 (1965).

(3) *Defendant concealed acceptance of the receiver and thereafter misrepresented that the receiver had been rejected.* This theory is, in the light of the facts as heretofore discussed, manifestly unsupported.

▉▉▉ (4) *The receiver was damaged by defendant.* The weight of the evidence does not support this theory.

(5) *Defendant was grossly negligent in releasing plaintiff's property (the receiver) to Railway Express Agency, the returning carrier, for a $50 value, with the result that plaintiff could not recover from Railway Express Agency for damage caused during the return of the receiver.* In view of the fact that the testimony produced by both plaintiff and defendant was to the effect that there was no additional damage to the receiver while it was being returned to plaintiff, and that there was no probative evidence

---

1. In 13 C.J.S. Carriers § 232, the following appears:

> Acceptance of the goods by the consignee, without objection and with knowledge of their defective condition, may preclude recovery for damages thereto, or for loss or destruction subsequent to delivery due to such defective condition. The consignee is entitled, however, to a reasonable opportunity for examination, and acceptance for that purpose will not be a waiver; nor will aceptance waive objection for damage not apparent. Indeed, the receipt of the goods alone, with no stipulation that they are accepted in full performance of the contract, does not, it seems, constitute a waiver of claim for damages for which the carrier may be liable. A receipt acknowledging a delivery of the goods in good condition is only prima facie evidence of the fact.

to the contrary, this theory is unsubstantiated.

(6) *If there was damage to the receiver on its return to plaintiff's plant (in addition to that previously reported by defendant) then defendant, having paid for the receiver, was liable for such additional damage because the receiver was then the property of defendant.* On the basis of the factual conclusion reached on theory (5), *supra,* this theory is likewise unsubstantiated.