Kenneth **HUTCHENS** and Lyle Hutchens, Plaintiffs,

v.

The **UNITED STATES,** Defendant.

No. 410–82L.

United States Claims Court.

May 31, 1984.

Roger M. Phillips, Kansas City, Mo., for plaintiff; Jackson, Dillard, Brouillette, Weisenfels, Phillips & Wood, Kansas City, Mo., of counsel.

Glen R. Goodsell, Washington, D.C., with whom was Asst. Atty. Gen., F. Henry Habicht, II, Washington, D.C., for defendant.

## OPINION RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

YANNELLO, Judge.

This matter is before the court on defendant's motion for summary judgment. Plaintiffs petitioned this court on August 16, 1982, seeking recovery of the sum of $405,000, and interest, as the payment price for defendant's purchase of certain flowage easements, claiming that defendant failed to pay this amount to them in contravention of its contractual obligation.

Defendant answered the petition on November 8, 1982; and, on December 17, 1982, the parties filed a number of joint stipulations. Defendant also moved for summary judgment pursuant to USCCR 56 at the same time the stipulations were filed.

For the reasons set forth and discussed herein, the court grants defendant's motion and plaintiffs' petition is to be dismissed.

### FACTS

On November 24, 1976, plaintiffs, through their predecessor corporation,[1] contracted to sell certain real property to R.H. Brownsberger. The property described as 1452 acres, more or less,[2] included certain appurtenances. The purchase price was $1,475,000, to be paid over time as specified in the purchase agreement. Interest was to run from January 1, 1977, and the down payment was to be paid into escrow by March 1, 1977. Title was to remain in plaintiffs until the full terms of the purchase agreement (including requisite payment) were fulfilled.

On March 17, 1977, defendant contacted plaintiffs concerning acquisition of a flowage easement over the property described above, in connection with the construction of the Harry S. Truman Dam and Reservoir in Missouri. This tract was designated

---

1. At the time, plaintiffs were officers and directors of Hutchens Brothers, Inc., a Missouri corporation. They appear in this matter as statutory trustees of the corporation.

2. This parcel was subsequently determined to include a total of 1,343.9 acres.

by defendant as Number 10600E, and defendant discussed with plaintiffs its arrangements for appraisal of the tract.

At the time of the appraisal, the property was occupied by Mr. and Mrs. Richard H. Brownsberger. Mr. Brownsberger had contracted with plaintiffs, as described above, to purchase the entire property in fee simple. By letter dated August 4, 1977, defendant advised the Brownsbergers of its desire to acquire a flowage easement of 1,219.59 acres over Tract No. 10600E. Defendant suggested a purchase price of $333,400 for this easement.[3]

Negotiations between defendant and the Brownsbergers began on August 12, 1977 and continued for several months. The Brownsbergers and defendant exchanged a number of counter-offers before finally reaching an agreement on January 9, 1978. On that date, the Brownsbergers offered the flowage easements to defendant for a total price of $405,000.[4]

Upon receiving this offer, defendant advised the Brownsbergers that, since they had not yet completed fulfillment of the terms of their contract to purchase nor received a deed thereunder, the record owners would have to sign the offer to sell easement.

Defendant's representative contacted plaintiffs in person on January 9, 1978 and advised them of the terms of the Brownsberger's offer. Both plaintiffs and the Brownsbergers signed the offer to sell flowage easements over the subject property on that date. The offer defined the term "Vendor" as used therein as referring to the "undersigned", that is: to plaintiff and the Brownsbergers.

The offers provided that they would become binding contracts upon notice of acceptance by defendant's authorized representative. The offers further specified that defendant, if it accepted the offer, promised to pay to the "Vendor" of the property the sum of $405,000, upon receipt from vendor of a good and sufficient warranty deed conveying title to the easements to defendant. Finally, the offers included the following provision:

(10) All terms and conditions with respect to this offer are expressly contained herein and the Vendor agrees that no representative or agent of the United States has made any representation or promise not contained herein.

On March 28, 1978, Richard Brownsberger entered into a further contract with plaintiffs for the sale of the property here in issue. The sale price for the property was to be $1,390,000, and was to be paid as follows:

... $265,000.00 on or prior to execution of this agreement, receipt of which is hereby acknowledged, and the balance of $1,125,000.00 to be paid as follows: $720,000.00 on delivery of the deed, with the remaining $405,000.00 to be paid at the time damages are paid by the Corps of Engineers for flowage easements in connection with construction of Truman Reservoir. Buyer hereby specifically agrees to pay interest on such amount from the 14th day of March, 1978, to the date such payment is made at the rate of nine percent per annum.

Plaintiffs' predecessor, Hutchens Brothers, Inc., and Kenneth and Martha Hutchens subsequently conveyed all right and title to the subject properties, free from encumbrances, to the Brownsbergers. Thereafter, on May 1, 1978, defendant approved the purchase of the flowage easements and issued a "Notice of Acceptance of Offer to Sell Easement" to plaintiffs and the Brownsbergers, as "Vendor".

**3.** Defendant also expressed its interest in acquiring an easement over a second parcel of land which was designated as Tract No. 10632E. This tract included 9.87 acres which defendant valued at $1,900.

The parties do not address any separate arguments to the smaller tract of land, but rather they deal only with the treatment to be accorded to the parties with respect to the property as a whole.

**4.** This included $402,000 for the larger tract (No. 10600E) and $3,000 for the smaller tract (No. 10632E) referred to in the preceding footnote.

Following this acceptance, defendant authorized a title search which, on July 14, 1978, disclosed that R.H. Brownsberger was listed as the sole owner in fee simple.[5] Richard Brownsberger, as titleholder, conveyed the warranted easement deeds to defendant in accord with the offer and acceptance described above, on July 21, 1978.[6] In consideration for the conveyance, defendant tendered a check, made payable to Brownsberger alone, in the amount of $405,000.

Brownsberger failed to make payment to plaintiffs in accordance with the March 28, 1978 contract of sale between plaintiffs and the Brownsbergers. *See Hutchens Brothers, Inc. v. Brownsberger*, 624 S.W.2d 538, 539 (Mo.App.1981). Plaintiffs sued to recover the unpaid balance on their contract with Brownsberger and obtained a judgment against him in the amount of $405,-000. This judgment was affirmed on appeal. *See Hutchens Brothers, Inc. v. Brownsberger*, 624 S.W.2d at 541. This judgment remains uncollected and is apparently uncollectable.

On August 16, 1982, plaintiffs petitioned this Court for judgment against defendant in the amount of $405,000, plus interest. Plaintiffs claim that defendant breached the express and implied terms of the contract to purchase the easement by failing to issue the check in payment to plaintiffs and Brownsberger as co-payees. Defendant filed its Answer on November 8, 1982 and, subsequently, the Motion for Summary Judgment now under consideration.

### DISCUSSION

#### Procedure

 This court may grant summary judgment under USCCR 56 when the record shows that there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. *Werking v. United States*, 4 Cl.Ct. 101, 104 (1983); *Lehner v.*

*United States*, 1 Cl.Ct. 408, 412 (1983). When determining the existence of genuine issues of material fact, the court will consider all inferences which may be drawn from the underlying facts in the light most favorable to the party opposing the motion. *Akiba South Side Jewish Day School and Open Kitchens, Inc. v. United States*, 221 Ct.Cl. 899, 900, 618 F.2d 124 (1979); *Coastal Petroleum Co. v. United States*, 220 Ct.Cl. 690, 693 (1979). If any doubts arise relative to the material facts in issue, they must be resolved against the moving party, in this instance the defendant. *South Louisiana Grain Services v. United States*, 1 Cl.Ct. 281, 289 (1982); *Housing Corp. of America v. United States*, 199 Ct.Cl. 705, 710, 468 F.2d 922 (1972). After careful consideration of the pleadings and papers submitted, the stipulated facts, the oral argument, and the post-argument submissions, the court concludes that there are no genuine issues of material fact and this matter is ripe for summary judgment.

#### Merits

Plaintiffs' claim, reduced to its essence, is that defendant had a contractual duty to issue payment to "vendor" (Hutchens Brothers and Brownsbergers) as co-payees. In its motion for summary judgment, defendant advances two primary arguments to obviate this claim. First, defendant contends that plaintiffs, by their own conduct, repudiated the contract to sell flowage easements, thereby waiving all rights under those contracts. Defendant's second contention is that plaintiffs' claim is barred by failure of the consideration agreed upon in the flowage easement contracts, namely, that plaintiffs could not transfer acceptable title to the government, and thus there was no consideration for a payment to plaintiffs.

In addition, during oral argument held on April 5, 1984, the parties, in response to inquiry from the court, discussed generally

---

**5.** Mrs. Brownsberger had died in the interim and her husband succeeded to her interests.

**6.** Neither plaintiffs' predecessor, Hutchens Brothers, Inc., nor plaintiffs appear on the title insurance or upon the warranty deeds for the easements.

the issues of the rights and obligations of multiple signatories to a contract, and, more specifically, joint and/or several promisees. After argument, they submitted supplemental briefs on this issue. All of these issues will be discussed below.

Apart from defining all of the multiple signators as "vendor", the contract contains no specific language as to the rights or obligations of the multiple signators, nor is there any explicit definition of whether these multiple signators are to be treated "jointly" or "severally" or "jointly and severally".

At the time the offer was made, the relationship of plaintiffs ("A") and Brownsberger ("B") as promisors with respect to conveying the easement are clear.

Specifically, "A" retained legal title to the tract in issue, but "B" was purchasing the land pursuant to a contract entered into late in 1976. Because A and B continued to execute and complete their contract for sale, the negotiations for an offer of easement were undertaken by the government with both. The government required the plaintiffs' signatures as owners of record (since B's purchase was not yet complete and he had no legal title or deed), and required the signature of B, recognizing the contract purchaser had equitable title. Thus, plaintiffs and Brownsberger were clearly acting jointly, as joint obligors, with respect to the offer to convey the easement to the government.

■ The relationship of plaintiffs and Brownsberger as obligees must also be examined. As a general rule, the rights of obligees of the same performance are joint *except* (1) to the extent that a different intention is manifested in the contract (which, as noted above, is not the case here) or (2) to the extent that the material or pecuniary interests of the obligees in the

performance of the contract (or in the remedies for breach of the contract) are distinct. *See,* RESTATEMENT (SECOND) OF CONTRACTS § 297 (1979).

■ A presumption that the obligees' rights are joint, and that they do not have "distinct" pecuniary interests in the contract's performance, may be particularly appropriate where their obligations as promissors are joint. *See, e.g.,* L. Simpson, HANDBOOK OF THE LAW OF CONTRACTS, at 295 (2d ed. 1965). Put another way, the rights of the obligees may be prima facie regarded as several chiefly where the consideration furnished by them is several, that is, separate, individual, or distinct. *See, e.g.,* 2 S. WILLISTON, A TREATISE ON THE LAW OF CONTRACTS, at 659 (3d ed. 1959). That was clearly not the case here.

■ At the time the offer was extended, plaintiffs and Brownsberger shared a community of interest in the proceeds of any contract with the government for the purchase of an easement. Under their 1976 agreement, plaintiffs ("A") held legal title to the fee, which Brownsberger ("B") had a contract to purchase for a stated sum to be paid over an indefinite period of time (with title to be transferred and a deed conveyed upon completion of payment), and with annual interest prescribed. As noted above, both A and B agreed to the sale of a flowage easement on the land here involved. That easement would encumber and run with the fee which was the subject of the purchase agreement between A and B. It is reasonable to presume that the affect of the easement upon the fee would also result in appropriate adjustments in the purchase price or its terms of payment, and hence generate a community of interest of A and B in the proceeds from the sale of the easement.[7]

7. Plaintiffs allege that, while A and B were performing their 1976 purchase agreement (that is, prior to March 28, 1978) and after the offer of easement had been extended to the government, plaintiffs had inquired of the government as to the manner of payment to be used *if* the government accepted the offer and purchased the ease-

ment. Allegedly, the government personnel responded that payment would be made by check to A and B jointly. Inasmuch as A and B were joint obligors and, more importantly, joint obligees (A holding legal title and B equitable title), this anticipated manner of payment was entire-

It might be said that the situation present here is one remarkably similar to that hypothesized in the HANDBOOK OF THE LAW OF CONTRACTS, by Professor Laurence P. Simpson, at page 296 as follows:

A and B together may... sell [to D] goods, in each case as the exchange for D's promise to pay them a stated sum. Together they furnish the consideration, their interest is joint, and the promise is made to both of them, so their right is joint. A single obligation is created to render a single performance by two people. Only one right exists and it is in A and B as a unit. ...

Professor Simpson also notes that under such circumstances *it would seem* "that D could secure a discharge [of his payment obligation] only by making payment to A and B together, or if to A, only on B's express authorization to A to receive payment for him. The law is otherwise, however." *(Id.)*

Where, as here, the multiple signators are found to have been acting "jointly", rather than "severally", the government, as obligor, was required to make payment to the "vendor" under the easement-acquisition contract, as joint obligees. This, however, does not require issuance of payment by check made to joint payees.

It is well established that when the obligees are "joint", the debtor may discharge his obligation to all by payment to any one. Each of the joint obligees has the power to act for himself and all other obligees in receiving payment. *See, e.g.,* RESTATEMENT (SECOND) OF CONTRACTS § 299 (1979); 2 S. Williston, A TREATISE ON THE LAW OF CONTRACTS § 343 (3d ed. 1959).[8]

Thus, payment to B alone, as a joint obligee, was entirely consistent with the law.

The previous discussion has centered on the relationship of A and B as joint obligees, with particular focus on their relations under their 1976 agreement and at the time the offer of easement acquisition was extended to the government. Some additional comments concerning the relationship of A and B at the time the government accepted this offer may also be appropriate.

---

ly appropriate. As appears in the following text, however, this was not required by law.

Moreover, after A and B executed their March 1978 agreement, A conveyed the deed to a fee simple to B and legal and equitable title merged in B, for which A could have exacted full payment of the purchase price attributable. Alternatively, A could have agreed to a partial payment only and could have conveyed a deed for an encumbered fee retaining in its own right the flowage easement. As will be seen in subsequent discussion, A took neither of these courses of action.

There has been no allegation that the government was informed by A that, based on the earlier representations concerning the manner of any payment by the government *if* it accepted the offer of an easement, A intended to enter into the March 1978 agreement under the terms actually contained therein. Indeed, there is no allegation that the government was ever informed, prior to its acceptance of the easement offer, of the precise terms of the March 1978 agreement between A and B.

8. An exception to this general rule exists, however. A discharge of the debtor (here, the government) in fraud of the other joint promisees, if the fraudulent intent is known by the debtor, is not a defense to a later suit by the other promisees. Similarly, discharge of a debtor by one joint creditor, in violation of an agreement (known to the debtor) between the creditors that no one of them should receive payment or give a release, is only effective as to the releasing creditor's share. In the instant case, there is no doubt that, prior to Brownsberger's ultimate default in his payment to plaintiffs, neither plaintiffs nor the government had any reason to suppose, let alone know, that such default was forthcoming.

Similarly, neither the November 1976 nor the March 1978 agreements between plaintiffs and Brownsberger, even if their terms were or should have been known to the government, provided that payment could not be made to any one of the parties. Indeed, the March 1978 agreement merely provided that a portion of Brownsberger's purchase price, specifically payment of $405,000, was due and payable only at the time the government made payment for acquisition of a flowage easement. Nothing in the terms of this agreement indicated that no one of the joint obligees was empowered to receive such payment from the government. Thus, such exceptions as might exist to the general rule are inapplicable here.

As noted in the factual recitation at the outset of this opinion, and as further explored in the preceding footnote, the government accepted the offer of an easement in May 1978. There is no allegation that the government was aware of the terms of the March 1978 agreement between A and B. Moreover, inasmuch as a variety of terms could have been reached between A and B in their separate agreements, as suggested in the preceding footnote, the government cannot be charged with responsibility for anticipating the actual terms agreed upon.[9] Accordingly, the government had no reason to presume a change in the previous joint nature of the rights and obligations of A and B and addressed its acceptance to both, as "vendor" under the contract and as joint parties thereto.

Following this acceptance, however, the government undertook a title search which revealed that legal and equitable title had merged in B (through the conveyance of a deed to fee simple as a result of A and B's March 1978 agreement). This change in status, and relationship, of A and B could well justify a change in the government's anticipated method of payment; that is, the government could elect to issue a check not payable to A and B jointly but to either one of the joint obligees, and such change in manner of anticipated payment (if indeed it were a change from previously announced intentions would be well-based in the change in factual circumstances[10] and, again, would be entirely consistent with the law.[11]

Accordingly, the government's payment to Brownsberger alone (who, at the time the contract was performed was the legal titleholder and conveyed the easement to the government) satisfied its contract obligation.

■ Having reached this conclusion, it is unnecessary to discuss further defendant's arguments concerning repudiation[12] and failure of consideration on the part of plaintiffs. Suffice it here to note that the plain-

**9.** In fact, A conveyed the title to the full fee simple to B in return for a partial payment of the purchase price, with the remainder to be remitted "when" the government acquired the easement. Under the literal terms of this agreement, if the government did not accept the offer, payment of this balance was not addressed. Moreover, assuming an acceptance by the government, this agreement did not contain specific agreement between the parties, A and B, as to who had the right, among them as joint obligees, to receive payment from the government. Finally, even were such agreement to be read into the agreement between A and B, there is no allegation that the government was advised thereof so as to take this into consideration in remitting its payment.

**10.** It should be noted that we are not faced here with a situation in which legal and equitable title merged in one of the joint obligees, but where the government elected to remit payment to the other obligee.

**11.** Inasmuch as the government could select one of the joint obligees as recipient of the payment for its acquisition of the easement, it is not necessary to discuss also the rights of A and B if they were "severally" entitled to payment. However, under the facts of this case, it might also be noted that if one were to view A and B, after their March 1978 agreement, as "several" obligees, the rights of each to payment for the easement would (absent any other specific language in the contract with the government and absent any knowledge of the government of their separate agreement) properly be assessed according to the consideration each furnished. In that instance, inasmuch as B furnished full title to the easement to the government, B would be entitled to the full payment even if A and B were viewed severally.

**12.** Defendant also employs the term "waiver" but apparently does so in its generic sense rather than as a term of art or as used in the cases discussing waiver. *See, e.g., Vitro Electronics v. United States,* 187 Ct.Cl. 428, 408 F.2d 1038 (1969) wherein plaintiff waived a general contract provision of timely notice of rejection of goods; and *Blaine Company v. United States,* wherein plaintiff, by its conduct relinquished the right to require defendant's strict compliance with the delivery schedule set forth in the contract; *see also, e.g., Brunswick Corp. v. Vineberg,* 370 F.2d 605 (5 Cir.1967) dealing with waivers and the continuing force and effect of the contract in the face of such waivers.

Given the facts of this case, it is clearly established that plaintiffs did not waive any alleged failure of the government to perform its obligations, particularly those inuring to plaintiffs' benefit, under the contract. Rather, the government's contentions seem directed to the argument that, by virtue of their alleged repudiation, plaintiffs waived their rights thereunder.

tiffs, as joint obligors under the contract, satisfied the requirement for consideration in that the easement was conveyed to defendant. The plaintiffs alone, in conveying fee title to Brownsberger (who was not an outside third party but rather was another joint obligee in the contract with the government) were not acting in repudiation of their contract with the government. Rather, they were acting to fulfill their agreement with Brownsberger—an agreement which was fully known prior to the offer of the easement to the government. Indeed, by completing this purchase agreement, plaintiffs enabled its legal title and Brownsberger's equitable title to merge in Brownsberger, thereby facilitating performance of the contract for easement.[13] In short, we find no merit in these contentions of defendant.

## CONCLUSION OF LAW

Based on the foregoing, it is concluded that defendant has fully satisfied its contract obligations by payment to one of the joint obligees, that defendant's Motion for Summary Judgment is GRANTED, and that the petition shall be dismissed. Costs to the prevailing party.

---

**13.** Thus, plaintiffs' conduct was not a repudiation, by word or deed, which rendered contract performance impossible, as is further evidenced by the fact that the contract was performed and the government did acquire the easement, and certainly did not consider the contract to have been terminated. *See, e.g., David J. Joseph Co.* *v. United States,* 113 Ct.Cl. 3 (1949); *James E. Kennedy, Trustee v. United States,* 164 Ct.Cl. 507 (1964); *Georgia Wholesale Co. v. United States,* 84 Ct.Cl. 150 (1936); *Roehm v. Horst,* 178 U.S. 1, 15–16, 20 S.Ct. 780, 785–786, 44 L.Ed. 953 (1899); and RESTATEMENT (SECOND) OF CONTRACTS, § 250 (1979).